## KENDACO, INC. v. RICKARD-BORSKE COMPANY AND OTHERS.

187 N. W. (2d) 697.

June 4, 1971—No. 42600.

*Newton S. Friedman* and *James T. M. Prest*, for appellants.
*Fryberger, Smith & Frederick* and *Harold A. Frederick*, for respondent.

Heard before Knutson, C. J., and Murphy, Otis, Rogosheske, and Rolloff, JJ.

MURPHY, JUSTICE.

Appeal from an order of the district court denying defendants' motions for an accounting of the proceeds of the sale and disposition of certain real and personal property pursuant to judgments entered against them.

The matter comes to us without a transcript or record, or an agreed statement as the record, as comprehended by Rules 110 and 111, Rules of Civil Appellate Procedure. As we gather from what has been submitted, defendants Rickard-Borske Company and Carl Lepak seek an accounting from plaintiff, Kendaco, Inc., of the proceeds from the sale of property. The relief is sought by motion in the district court, supported by an affidavit of defendants' attorney. In addition to the motion and affidavit, the record contains a copy of the original note and contract for sale entered into between plaintiff and defendant firm and defendants Carl and Bernadine Lepak, an order granting summary judgment in plaintiff's favor on the note and contract against the corporate defendant, the judgment entered August 14, 1964, a writ of execution, a report of sheriff's sale thereon, dated November 9, 1964, and an additional judgment against the individual defendants, entered January 13, 1965.[1]

From the foregoing material, briefs, and oral argument, it appears that, on April 7, 1962, defendant Rickard-Borske Company, a corporation, and the individual defendants executed a conditional sales contract to plaintiff, Kendaco, Inc., together with a promissory note in the principal sum of $24,994.76. The makers defaulted on payment of the note, after which action on

---

[1] Bernadine Lepak did not join in the motion for an accounting and is not an appellant here.

the debt was commenced. A money judgment in the amount of $20,706.01 was entered August 14, 1964, against the corporate defendant. Except for a small balance of approximately $30, this judgment appears to have been satisfied by execution sale. The sheriff's report of sale covers a store building in which the debtor corporation was housed, which includes a coin-operated dry-cleaning and laundry center, a beauty salon, a grocery store, and a small office. It further appears that, on January 13, 1965, a judgment was entered against the Lepaks individually for roughly the principal amount of the same indebtedness and attorney's fees. By this judgment, Kendaco, Inc., was given possession of the equipment covered by the conditional sales contract. It provided that upon disposition of such property the excess was to be repaid to the debtors.

We are further told that during the period of redemption from the execution sale the parties worked together in attempting to find a purchaser for the building and dry-cleaning equipment as a unit in the hope of achieving a better price. It is indicated or suggested that the debtors were permitted to stay in possession of the building until March 1966. It is also indicated that Carl Lepak, president of the debtor corporation, gave a bill of sale covering the dry-cleaning equipment to one Harry Davis. Davis removed some of the equipment from the premises but was prevented by the judgment creditor from removing the balance. A suit followed in which Davis sought recovery of the equipment from Kendaco, Inc., and it seems to be agreed that he was paid $761 in settlement of this action. Why Kendaco, Inc. should pay damages to Davis for the taking of property which it owned is not explained. In its brief, Kendaco asserts:

"R & B [defendant corporation] has the gall to represent to the court that Kendaco has by retaining possession of the dry-cleaning equipment obtained a double recovery. In fact, R & B by bill of sale dated April 25, 1966, sold all of the equipment to Harry Davis, plaintiff in the related lawsuit, Davis took possession of virtually all of the equipment, the same burned up in a

fire while in the possession of Davis and was turned over to Kendaco as a part of the settlement of the lawsuit with Harry Davis. Certainly, whatever right R & B had to an accounting as to the drycleaning equipment passed to Harry Davis with the bill of sale to the equipment. How R & B expects to receive an accounting for equipment which it sold to a third party and for which it was paid, boggles the mind."

At this point it may be noted that defendants seek to bring up for review unspecified irregularities in the execution of two judgments, as well as the merits of a collateral action with the alleged purchaser of property involved in the second judgment. It should be noted that the money judgment was entered August 14, 1964. The time for redemption from the execution sale on that judgment expired November 9, 1965. The judgment against the individual defendants relating to the possession of the personal property was entered January 13, 1965. Of course, no appeal was ever taken from either of these judgments, nor was relief sought under Rule 60, Rules of Civil Procedure. The present motion for an accounting was not presented until November 1969. That motion is not based upon allegations of fraud nor is any relationship or facts asserted, or supported by the record, which indicate that the judgment creditor failed in any duty to account for property or money which it might owe to the defendants. 1A Dunnell, Dig. (3 ed.) § 63z; 1 C. J. S., Accounting, §§ 4 and 7.

We have no record of what transpired before the trial court on the defendants' motion for an accounting. Apparently, the trial court was in possession of facts which are not available to us. In denying the motion for an accounting, the trial court said:

"* * * The evidence indicates that in view of the proceedings that subsequently occurred, these defendants have not been prejudiced or damaged. They have obtained all of the benefit of the personal property by having retained it for a considerable length of time after the judgment and thereafter selling same and obtaining recovery against the plaintiff by the assignee of that sale

for the full amount and value of the personal property, although it would have been preferable for the plaintiff to have taken control of the personal property and sold it and applied the proceeds to that judgment and then, if insufficient, to have levied an execution on the real estate according to that judgment. The Court fails to see how the defendants have been harmed or prejudiced thereby. In view of the facts above stated, the Court feels it is incumbent upon it to call an end to this litigation. The plaintiff has satisfied its judgments, and the defendants have had the use and benefit and profit from the personal property. This is the result contemplated by Judge Kaner in the issuance of both judgments.

"There is some indication that the plaintiff requires the setting aside of the order of this Court, Judge Patrick D. O'Brien, on November 13, 1969, enjoining Kendaco, Inc. from disturbing or interfering with the funds from the sale of said real estate now in escrow pending the determination of the validity and satisfaction of a first mortgage on said premises. There may have been an oral motion to this effect by plaintiff, but the Court recalls no evidence to indicate that the dispute concerning this first mortgage has been settled or disposed of, and, therefore, on the basis of the information available to this Court, such an order cannot here be made."

It is apparent from the foregoing statement of the trial court that the judgments have been satisfied and that disposition of the property involved has been made, as comprehended by the court which granted the judgments. The trial court's memorandum would indicate that, in addition to the complications resulting from the alleged sale of property to Davis, Kendaco is still involved in litigation with relation to the property it purchased on execution sale as a result of encumbrances upon the real estate involved.

In view of the record before us and the manner in which the alleged claims of the defendants have been presented, we would not be justified in saying that the trial court erred in denying

the accounting and, accordingly, affirm. 1B Dunnell, Dig. (3 ed.) § 342.

Affirmed.