In the Matter of Vanessa Yolanda REW, and o/b/o T.C.B. and D.S.B., Respondent,

v.

James Allen BERGSTROM, Appellant.

No. A10–2145.

Supreme Court of Minnesota.

April 30, 2014.

Thomas A. Gilligan, Jr., Murnane Brandt, Saint Paul, MN, for respondent.

James Allen Bergstrom, Roseville, MN, pro se.

Lori Swanson, Attorney General, Alan I. Gilbert, Solicitor General, Michael Everson, Assistant Attorney General, Saint Paul, MN, for amicus curiae Minnesota Attorney General.

Kristine Lizdas, Minneapolis, MN, for amicus curiae Battered Women's Justice Project.

Rana SA Fuller, Minneapolis, MN, for amicus curiae Battered Women's Legal Advocacy Project.

Elizabeth J. Richards, Beverly Balos, Saint Paul, MN, for amicus curiae Minnesota Coalition for Battered Women.

Michelle L. MacDonald, Athena V. Hollins, MacDonald Law Firm, LLC, West Saint Paul, MN, for amici curiae The Family Innocence Project and Center for Parental Responsibility.

Mary Catherine Lauhead, Saint Paul, MN; and Michael D. Dittberner, Linder, Dittberner & Bryant, Ltd., Edina, MN; and Steven Snyder, Maple Grove, Minnesota, for amicus curiae Family Law Section, Minnesota State Bar Association.

## OPINION

STRAS, Justice.

At issue in this case is the legality of a district court's extension for up to 50 years of an order for protection ("OFP") in favor of a victim of domestic abuse and her minor children. Over the objections of appellant James Allen Bergstrom, the district court granted an extension of an existing OFP to respondent Vanessa Yolanda Rew, Bergstrom's ex-wife, prohibiting contact between Bergstrom and Rew or their minor children. Bergstrom raises a variety of statutory and constitutional challenges to the OFP. We affirm in part, reverse in part, and remand to the district court for findings regarding whether prohibiting Bergstrom from having any contact with his two minor children is necessary to serve a significant state interest.[1]

I.

Bergstrom and Rew had been married for 14 years when they dissolved their marriage in 2008. In 2002, 2007, and 2008, following hearings that both Rew and Bergstrom attended, Rew obtained a series of 1–year OFPs against Bergstrom. Each OFP also contained provisions that protected the couple's minor children, T.C.B. and D.S.B. Bergstrom consented to the issuance of each of the three OFPs. In fact, the OFPs stated that Bergstrom understood that they would be "enforced as if there was an admission or finding of domestic abuse."

The OFPs issued in 2002, 2007, and 2008 provided several forms of relief to Rew and the minor children. First, the OFPs, alone or together with the marital-dissolution decree, provided custody of the children to Rew. Second, the OFPs prohibited

---

1. Until submission of this case, Bergstrom was represented by counsel. Approximately two months after oral argument, however, we temporarily suspended Bergstrom's attorney. We later placed the attorney on inactive status. Substitute counsel has not appeared on Bergstrom's behalf. Accordingly, even though counsel represented Bergstrom on the briefs and at oral argument, we designate Bergstrom as appearing pro se in this opinion.

Bergstrom from contacting Rew and placed substantial limits on Bergstrom's parenting time. Third, the OFPs created a buffer zone in and around Rew's home that Bergstrom could not enter. The 2002 OFP prohibited Bergstrom from entering Rew's home, and the 2007 and 2008 OFPs prohibited Bergstrom from coming within 120 yards of Rew's home.

The 2008 OFP imposed further restrictions on Bergstrom that were not part of the earlier OFPs. Specifically, it prohibited Bergstrom from coming within 120 yards of either the children's school or a second residence where the children ostensibly received childcare. It also proscribed any contact between Bergstrom and "the two minor children, whether in person, with or through other persons, by telephone, letter, electronic means, or in any other way." For Bergstrom to regain contact with his minor children through parenting time, the OFP established two conditions: (1) that Bergstrom and the children separately participate in therapy for at least 6 months or "until such time as the therapist deems such therapy no longer necessary"; and (2) that Bergstrom seek and receive court approval for modification of the OFP's parenting-time provisions. In 2009, the district court extended the duration of the 2008 OFP for 1 additional year and reduced Bergstrom's therapy obligation from 6 months to 3 months.

The district court has also convicted Bergstrom of three OFP violations. In 2002, Bergstrom pleaded guilty to a misdemeanor OFP violation that resulted in probation. In 2007, Bergstrom pleaded guilty to a felony charge of knowingly violating an OFP within 10 years of the first of two or more previous qualified domestic-violence-related convictions, Minn.Stat. § 518B.01, subd. 14(a), (d)(1) (2012). The

court again placed Bergstrom on probation. At the same time, the court dismissed two other charges brought in the same criminal complaint: a gross-misdemeanor charge of harassment and stalking and a misdemeanor charge of unlawful use of license plates.

In 2008, Bergstrom again pleaded guilty to a felony charge of knowingly violating an OFP within 10 years of the first of two prior qualified domestic-violence-related convictions—the same crime to which he pleaded guilty in 2007. The 2008 conviction arose from evidence that Bergstrom had unlawfully accessed Rew's email account on multiple occasions. The court sentenced Bergstrom to 5 years' imprisonment but stayed execution of the sentence in favor of probation. When Bergstrom violated the terms of his probation in February 2009, the district court revoked the stay and executed Bergstrom's prison sentence. Bergstrom served approximately 8 months in prison. In April 2010, the State charged Bergstrom with felony harassment and another felony OFP violation, but the prosecutor dismissed the charges in June 2010.

In July 2010, approximately 1 month before the extended expiration date of the 2008 OFP, Rew filed an application under Minn.Stat. § 518B.01, subd. 6a (2012), to extend the terms of the 2008 OFP for up to 50 years. Subdivision 6a(a) establishes the criteria for either an extension of an existing OFP or a new OFP after an existing one has expired. The provision states that a court may

extend the terms of an existing [OFP] or, if an [OFP] is no longer in effect, grant a new order upon a showing that:

(1) the respondent has violated a prior or existing order for protection;

(2) the petitioner is reasonably in fear of physical harm from the respondent;

(3) the respondent has engaged in the act of stalking within the meaning of section 609.749, subdivision 2; or

(4) the respondent is incarcerated and about to be released, or has recently been released from incarceration.

Minn.Stat. § 518B.01, subd. 6a(a). To extend an OFP for up to 50 years, subdivision 6a(b) requires a court to further find that: "(1) the respondent has violated a prior or existing order for protection on two or more occasions; or (2) the petitioner has had two or more orders for protection in effect against the same respondent."

In Rew's 2010 application to extend the terms of the 2008 OFP for up to 50 years, Rew alleged facts in support of the four criteria in subdivision 6a(a) and the two criteria in subdivision 6a(b). Rew supported the application with an affidavit describing Bergstrom's history of domestic violence, including the behavior underlying the charges against Bergstrom that were dismissed in 2007 and 2010, and Bergstrom's three prior convictions of violation of an OFP.

The district court held an evidentiary hearing on Rew's application. Both Bergstrom and Rew attended the hearing and were represented by counsel. Rew did not testify or call any witnesses. Instead, she established the existence of the 2002, 2007, and 2008 OFPs by placing certified copies of the OFPs into evidence. She also established the existence of Bergstrom's three prior convictions of violation of an OFP by placing into evidence the Register of Actions from the Minnesota State Court Information System for each conviction. The court took judicial notice of Bergstrom's incarceration in state prison from March 2009 through October 2009 for the violation of an OFP. After reviewing Rew's evidence, the district court found that Rew's application was based solely on evidence that Bergstrom had violated prior OFPs and had been recently released from incarceration, Minn.Stat. § 518B.01, subd. 6a(a)(1), (4), not on evidence that Rew feared physical harm, see Minn.Stat. § 518B.01, subd. 6a(a)(2), or that Bergstrom had engaged in stalking, see Minn. Stat. § 518B.01, subd. 6a(a)(3).

Bergstrom did not admit to any of the allegations in Rew's application for an extended OFP. To the contrary, Bergstrom attempted to present evidence in opposition to Rew's application, including his own testimony and testimony from two other witnesses, but the district court excluded Bergstrom's evidence as irrelevant. See Minn. R. Evid. 402. Although Bergstrom argued that the testimony would refute Rew's evidence regarding the 2010 incident that resulted in the dismissal of charges against Bergstrom, the district court excluded the evidence because it did not rebut Rew's evidence establishing Bergstrom's three prior convictions for violation of an OFP, or the evidence that Bergstrom had recently been released from prison.

Based on the evidence, the district court found that Rew had satisfied two of the criteria for extending an OFP under Minn. Stat. § 518B.01, subd. 6a: that Bergstrom had violated "a prior or existing order for protection," Minn.Stat. § 518B.01, subd. 6a(a)(1); and that Bergstrom had recently been released from incarceration, Minn. Stat. § 518B.01, subd. 6a(a)(4). The court concluded that either basis was independently sufficient to support an extension of the terms of the 2008 OFP.

The court also made findings under subdivision 6a(b) to support the extension of the terms of the 2008 OFP for up to 50

years. Specifically, the court found that Bergstrom had "violated a prior or existing [OFP] on two or more occasions," Minn.Stat. § 518B.01, subd. 6a(b)(1); and that Rew "has had two or more [OFPs] in effect against" Bergstrom, Minn.Stat. § 518B.01, subd. 6a(b)(2). Accordingly, the court extended the 2008 OFP for 50 years ("the extended OFP").

When the district court extended the terms of the 2008 OFP, it included several provisions that are relevant to the legal issues presented in Bergstrom's appeal. First, the extended OFP prohibits Bergstrom from coming within 120 yards of not only Rew's residence, but also her workplace or church—two locations not subject to such a restriction in the earlier OFPs. Second, the extended OFP continues the suspension of Bergstrom's parenting time until he completes a minimum of 3 months of therapy, the children complete a minimum of 6 months of therapy, and he successfully applies to a court for the restoration of his parenting time. Third, the extended OFP prohibits Bergstrom from entering, calling, or coming within 120 yards of the children's schools or locations where they receive childcare. Finally, the extended OFP creates a new buffer zone around Rew and the minor children: it requires Bergstrom to stay at least 50 yards away from Rew and the children in all public places.[2]

Bergstrom then moved to vacate the extended OFP under Minn. R. Civ. P. 60.02. Specifically, Bergstrom challenged the sufficiency of the district court's findings and asserted that the extended OFP violated various constitutional provisions, including the First Amendment, the Double Jeopardy Clause, the Ex Post Facto Clause, the Equal Protection Clause, and the Due Process Clause. Bergstrom also argued that the district court erred when it issued the extended OFP without making a finding that he had committed domestic abuse against Rew and the minor children. Following a hearing, the district court denied Bergstrom's motion to vacate the extended OFP.

The court of appeals affirmed. *Rew ex rel. T.C.B. v. Bergstrom*, 812 N.W.2d 832 (Minn.App.2011). The court concluded that Minn.Stat. § 518B.01, subd. 6a, does not violate Bergstrom's First Amendment right to free speech because it burdens no more speech than necessary to serve a significant government interest. *Rew*, 812 N.W.2d at 840. The court also rejected Bergstrom's claims that his procedural due process rights were violated when the district court granted the extended OFP, that the extended OFP imposes a criminal penalty upon him and thus violates double jeopardy, and that the extended OFP violates the Ex Post Facto Clause of the United States Constitution. *Id.* at 841–44. Finally, based on the plain language of Minn.Stat. § 518B.01, subd. 6a, the court concluded that a district court is not re-

---

**2.** In addition to providing statutory authorization for the extension of an OFP for up to 50 years, Minn.Stat. § 518B.01, subd. 6a(b), includes the following language: "An order issued under this paragraph may restrain the abusing party from committing acts of domestic abuse; or prohibit the abusing party from having any contact with the petitioner, whether in person, by telephone, mail or electronic mail or messaging, through electronic devices, through a third party, or by any other means." On appeal, Bergstrom does not argue, nor do we decide, whether the foregoing language limits the authority of a district court to impose certain restrictions on the target of an OFP when the court extends an OFP for up to 50 years. For similar reasons, we also need not, and do not, decide whether a district court may impose new conditions when it extends the duration of an existing OFP.

quired to make a finding of domestic abuse before extending an OFP. *Id.* at 844–45. We granted Bergstrom's petition for review.

## II.

The first question presented by this case is whether Minn.Stat. § 518B.01, subd. 6a, requires a finding of domestic abuse before a district court may extend the duration of an OFP. It is undisputed that the court made no explicit finding of domestic abuse when it extended the terms of the 2008 OFP for 50 years.

■■■ The interpretation of a statute is a legal question that we review de novo. *500, LLC v. City of Minneapolis,* 837 N.W.2d 287, 290 (Minn.2013). The first step in statutory interpretation is to "determine whether the statute's language, on its face, is ambiguous." *Id.* (citation omitted) (internal quotation marks omitted). If a statute is unambiguous, then we apply the statute's plain meaning. *See Larson v. State,* 790 N.W.2d 700, 703 (Minn.2010). If, on the other hand, a statute is susceptible to more than one reasonable interpretation, then it is ambiguous and we may look to the canons of statutory construction to ascertain its meaning. *See State v. Hayes,* 826 N.W.2d 799, 804 (Minn.2013).

■■■ Although Minn.Stat. § 518B.01, subd. 2 (2012), defines "domestic abuse," none of the criteria for extending an OFP mention "domestic abuse." Indeed, subdivision 6a sets forth a total of six criteria that are relevant to the decision of whether to extend an OFP—four in paragraph (a) that govern any extension of an OFP and two in paragraph (b) that govern an extension for up to 50 years—and none require a finding of "domestic abuse." *See* Minn.Stat. § 518B.01, subd. 6a (governing the extension of an OFP). Only two of the criteria in paragraph (a) plausibly relate to a finding of "domestic abuse": whether a petitioner "is reasonably in fear of physical harm from the respondent," Minn.Stat. § 518B.01, subd. 6a(a)(2); and whether the respondent "has engaged in the act of stalking," Minn.Stat. § 518B.01, subd. 6a(a)(3). *See* Minn.Stat. § 518B.01, subd. 2(a) (defining "domestic abuse" as, among other things, "the infliction of fear of imminent physical harm, bodily injury, or assault"). But neither *requires* a finding of "domestic abuse," and none of the other criteria in paragraphs (a) or (b) require a district court to find the existence of "domestic abuse." In the absence of statutory language requiring a finding of "domestic abuse" before a district court extends an OFP, we decline to impose such a requirement. *See Premier Bank v. Becker Dev., LLC,* 785 N.W.2d 753, 760 (Minn.2010) (stating that we will not add words to a statute "that are purposely omitted or inadvertently overlooked" by the Legislature).

Bergstrom is mistaken when he asserts that *Schmidt ex rel. P.M.S. v. Coons,* 818 N.W.2d 523 (Minn.2012), compels a different conclusion. In *Schmidt,* we vacated an OFP granted on behalf of a minor child because the district court had not found that the child was a victim of domestic abuse. *Id.* at 529. The OFP at issue in *Schmidt,* however, was an *initial* OFP issued under subdivision 4 of Minn.Stat. § 518B.01, not an OFP that was *extended* under subdivision 6a. By its terms, subdivision 4 requires that an initial petition for an OFP must "allege the existence of domestic abuse" and be accompanied by a supporting affidavit. Minn.Stat. § 518B.01, subd. 4(b) (2012). Subdivision 6a, however, does not impose either requirement on a party who is seeking the

extension of an existing OFP. Accordingly, *Schmidt* does not alter our conclusion that the plain and unambiguous language of Minn.Stat. § 518B.01, subd. 6a, does not require a district court to make a finding of "domestic abuse" before it extends an OFP.

## III.

█ The second question presented by this case is whether the extension of an OFP under Minn.Stat. § 518B.01, subd. 6a, violates the First Amendment to the United States Constitution or Article I, Section 3 of the Minnesota Constitution. Bergstrom suggests that Minn.Stat. § 518B.01, subd. 6a, which allows a district court to extend the duration of an OFP for up to 50 years, creates an unconstitutional prior restraint of his speech under both provisions. The free-speech protections of the Minnesota Constitution are coextensive with those of the First Amendment to the United States Constitution. *See State v. Wicklund,* 589 N.W.2d 793, 799–801 (Minn. 1999). The constitutionality of a statute is a question of law that we review de novo. *Schatz v. Interfaith Care Ctr.,* 811 N.W.2d 643, 653 (Minn.2012).

### A.

The First Amendment states that "Congress shall make no law ... abridging the freedom of speech." U.S. Const. amend. I. Article I, Section 3 of the Minnesota Constitution likewise protects the rights of "all persons" to "freely speak, write and publish their sentiments on all subjects, being responsible for the abuse of such right." Minn. Const. art. I, § 3. To address Bergstrom's argument that Minn.Stat. § 518B.01, subd. 6a, is facially unconstitutional and unconstitutional as applied to him, we must determine how to analyze an OFP under the First Amendment and Article I, Section 3 of the Minnesota Constitution. Bergstrom argues that an OFP is a prior restraint on speech.

█ In general, prior restraints are viewed unfavorably under the First Amendment because they forbid certain communications before they occur, usually through the issuance of an administrative or judicial order. *See Alexander v. United States,* 509 U.S. 544, 550, 113 S.Ct. 2766, 125 L.Ed.2d 441 (1993). Prior restraints on speech generally bear a heavy presumption against their constitutionality. *New York Times Co. v. United States,* 403 U.S. 713, 714, 91 S.Ct. 2140, 29 L.Ed.2d 822 (1971).

Although an OFP satisfies the general definition of a prior restraint because it prohibits, by judicial order, certain communications before they occur, the Supreme Court of the United States has clarified that "[n]ot all injunctions that may incidentally affect expression" are prior restraints subject to a presumption of unconstitutionality. *Madsen v. Women's Health Ctr., Inc.,* 512 U.S. 753, 763 n. 2, 114 S.Ct. 2516, 129 L.Ed.2d 593 (1994). In *Madsen,* the petitioners challenged the constitutionality of an injunction prohibiting them from engaging in certain types of speech in demarcated areas around an abortion clinic. *Id.* at 759–61, 114 S.Ct. 2516. The Court declined to characterize the injunction in *Madsen* as a prior restraint for two reasons. First, the petitioners in *Madsen* were "not prevented from expressing their message in any one of several different ways." *Id.* at 763 n. 2, 114 S.Ct. 2516. Second, the injunction in *Madsen* "was issued not because of the content of petitioners' expression ... but because of their prior unlawful conduct." *Id.*

█ An OFP shares the same basic characteristics as the injunction in *Mad-*

*sen.* Like the injunction in *Madsen,* an OFP does not prohibit a person from expressing his or her ideas; rather, it requires a person to express those ideas to people other than those protected by the OFP. Indeed, in this case, Bergstrom is "not prevented from expressing [his] message in any one of several different ways," *id.;* he just cannot express his views to Rew or the minor children. *See Hill v. Colorado,* 530 U.S. 703, 734–35, 120 S.Ct. 2480, 147 L.Ed.2d 597 (2000) (stating that traditional prior-restraint analysis is inapplicable to a statute that prevents a speaker from communicating a message that the listener does not want to hear without affecting "any other activity at any other location or relating to any other person").[3] Similarly, a district court ordinarily issues an OFP based on a person's prior unlawful conduct, not based on the content of any particular message that the person wishes to express. The extended OFP in this case illustrates the point: due to Bergstrom's three prior OFP violations, it prohibits him from contacting Rew or the minor children regardless of the content of his speech.

■ Having rejected Bergstrom's argument that an OFP constitutes a prior restraint on speech, we must now determine how to analyze an OFP under the First Amendment and Article I, Section 3 of the Minnesota Constitution. The court of appeals evaluated Bergstrom's claim under the standard articulated in *Madsen.* The court of appeals was correct. As we state above, an OFP shares the same essential characteristics as the injunction that the Court analyzed in *Madsen.* It does not prevent an individual from expressing his or her ideas in other ways, nor does it regulate speech based on its content. Most importantly, the court of appeals' approach is also consistent with the Supreme Court's guidance that the proper test for evaluating content-neutral injunctions under the First Amendment is the test from *Madsen:* "whether the challenged provisions of the injunction burden no more speech than necessary to serve a significant government interest." *Madsen,* 512 U.S. at 765, 114 S.Ct. 2516; *see also Schenck v. Pro–Choice Network of W.N.Y.,* 519 U.S. 357, 372, 117 S.Ct. 855, 137 L.Ed.2d 1 (1997) (stating that the *Madsen* framework applies to content-neutral injunctions that burden speech).[4]

3. Apart from supporting our conclusion that the OFP in this case should not be analyzed as a prior restraint, *Hill v. Colorado* also suggests another approach to analyzing the no-contact provisions (as opposed to the buffer-zone provisions) of an OFP in certain situations: as protecting "[t]he unwilling listener's interest in avoiding unwanted communication." 530 U.S. at 716, 120 S.Ct. 2480. The Supreme Court recognized a listener's right to avoid unwelcome speech in *Rowan v. United States Post Office Department,* in which the Court upheld a statute that permitted an individual to obtain an order from the Postmaster General directing the sender of certain types of mail to stop sending mail to that individual. 397 U.S. 728, 729–31, 90 S.Ct. 1484, 25 L.Ed.2d 736 (1970). The Court explained:

We ... categorically reject the argument that a vendor has a right under the Constitution or otherwise to send unwanted material into the home of another. If this prohibition operates to impede the flow of even valid ideas, the answer is that no one has a right to press even "good" ideas on an unwilling recipient. That we are often "captives" outside the sanctuary of the home and subject to objectionable speech and other sound does not mean we must be captives everywhere.

*Id.* at 738, 90 S.Ct. 1484. Because neither party discusses the applicability of the captive-audience doctrine from *Rowan* and its progeny, however, we express no opinion about when, and how, the doctrine might

### B.

■ We now turn to Bergstrom's contention that Minn.Stat. § 518B.01, subd. 6a(b), is facially unconstitutional under the First Amendment and Article I, Section 3 of the Minnesota Constitution. To succeed in a facial challenge under the First Amendment, a litigant must establish that " 'no set of circumstances exists under which [the statute] would be valid,' " *United States v. Stevens*, 559 U.S. 460, 472, 130 S.Ct. 1577, 176 L.Ed.2d 435 (2010) (quoting *United States v. Salerno*, 481 U.S. 739, 745, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987)), that "the statute lacks any 'plainly legitimate sweep,' " *id.* (quoting *Washington v. Glucksberg*, 521 U.S. 702, 740 n. 7, 117 S.Ct. 2258, 138 L.Ed.2d 772 (1997) (Stevens, J., concurring in judgments)), or that " 'a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep,' " *id.* at 473, 130 S.Ct. 1577 (quoting *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 n. 6, 128 S.Ct. 1184, 170 L.Ed.2d 151 (2008)). Without providing specific examples, Bergstrom argues that there are a substantial number of unconstitutional applications of subdivision 6a(b). We disagree with Bergstrom's characterization of the statute.

We do not evaluate the facial constitutionality of a statute in a vacuum. Rather, the task in evaluating a facial challenge is to determine whether a statute is unconstitutional in a substantial number or all of its applications, as the case may be, under the applicable constitutional standard governing challenges of the type brought by the party alleging the unconstitutionality of the statute. Stated more succinctly, facial and as-applied challenges differ in *the showing* required to invalidate a statute, not in the underlying substantive standard that applies to each type of challenge. *See, e.g., Legal Aid Servs. of Or. v. Legal Servs. Corp.*, 608 F.3d 1084, 1096 (9th Cir. 2010) (stating that the underlying constitutional standard does not differ between facial and as-applied challenges); *Independence News, Inc. v. City of Charlotte*, 568 F.3d 148, 155 n. 3 (4th Cir.2009) (explaining that the same constitutional standard applies to facial and as-applied challenges to content-neutral zoning ordinances). We therefore evaluate Bergstrom's facial and as-applied challenges using the constitutional standard from *Madsen:* whether an OFP "burden[s] no more speech than necessary to serve a significant government interest." 512 U.S. at 765, 114 S.Ct. 2516.

Bergstrom's facial challenge requires us to determine whether, in a substantial

apply in a future case involving the constitutionality of an OFP.

4. The court of appeals also cited *United States v. O'Brien*, 391 U.S. 367, 376, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968), for the proposition that "when 'speech' and 'nonspeech' elements are combined in the same course of conduct, a sufficiently important governmental interest in regulating the nonspeech element can justify incidental limitations on First Amendment freedoms." Although we conclude that *Madsen* provides the appropriate framework in this case, we note that the level of scrutiny applied to a content-neutral injunction under *Madsen* appears to be equivalent to or more exacting than the level of scrutiny applied under *O'Brien. Compare O'Brien*, 391 U.S. at 377, 88 S.Ct. 1673 (requiring incidental restrictions on speech to "further[ ] an important or substantial government interest" and to be "no greater than is essential to the furtherance of that interest"), *with Madsen*, 512 U.S. at 765, 114 S.Ct. 2516 (stating that a content-neutral injunction must "burden no more speech than necessary to serve a significant government interest"). Accordingly, our legal conclusions in this case would not change even if we substituted the *O'Brien* framework for the *Madsen* framework in reviewing the constitutionality of the extended OFP.

number or in all of its applications, subdivision 6a(b) fails to satisfy the *Madsen* standard. There is little question that the prevention of domestic violence and the protection of the health and safety of domestic-abuse victims and members of their household and family are significant government interests. *See Bendorf v. Comm'r of Pub. Safety*, 727 N.W.2d 410, 416–17 (Minn.2007) (holding that the "state has a compelling interest" in protecting "the citizens of Minnesota" from individuals who "pose a severe threat to the[ir] health and safety" (citation omitted) (internal quotation marks omitted)); *Baker v. Baker*, 494 N.W.2d 282, 288 (Minn.1992) (observing that the State has a "strong interest in preventing violence in a domestic setting"). An OFP serves those significant government interests by protecting domestic-abuse victims and members of their household and family from the dangers presented by a perpetrator of domestic abuse, particularly in those situations in which the victim has just left or attempted to leave an abusive relationship. *See Baker*, 494 N.W.2d at 286 n. 4 ("Extensive research on domestic abuse supports the assertion that the risk of danger increases once the victim makes the choice or attempts to leave the abusive relationship."). Subdivision 6a(b), which authorizes district courts to extend the duration of an OFP for up to 50 years, provides victims with a long-term remedy that prevents them from having to repeatedly apply for an OFP and face their abusers in court. Thus, subdivision 6a(b) serves a significant government interest.

■ Bergstrom's primary objection, however, is to the potential breadth of an OFP issued under subdivision 6a(b). In his view, such an OFP logically burdens more speech than necessary to serve the government interest because there is rarely, if ever, a reason to extend an OFP for up to 50 years—effectively the remaining lifespan of many abusers. The *Madsen* framework, however, does not require "surgical precision" in an injunction. *Madsen*, 512 U.S. at 762, 766–67, 114 S.Ct. 2516 (rejecting the proposition that a content-neutral injunction should be subject to strict-scrutiny review). Rather, it requires only that the injunction burden no more speech than necessary to serve the significant government interest. Coupling the tailoring requirement from *Madsen* with the heavy burden faced by a party making a facial challenge, Bergstrom has failed to show that a substantial number of the OFPs issued under subdivision 6a(b) would be unconstitutional given the statute's plainly legitimate sweep.

Specifically, Bergstrom discounts the requirements of subdivision 6a, which compel a district court to make at least two findings before extending an OFP for up to 50 years. The district court must first find that an extension of an existing OFP is necessary because "the respondent has violated a prior or existing order for protection," the applicant is "reasonably in fear of physical harm from the respondent," the respondent had engaged in stalking, or the respondent has been or is about to be released from incarceration. Minn.Stat. § 518B.01, subd. 6a(a). To extend the OFP for up to 50 years, a district court must then make an additional finding either that the respondent has "violated a prior or existing [OFP] on two or more occasions" or that the applicant "has had two or more [OFPs] in effect against" the respondent. Minn. Stat. § 518B.01, subd. 6a(b). Taken together, the findings required under subdivision 6a establish that only the most persistent abusers—those that have repeatedly violated an OFP or

engaged in behavior that has required the issuance of multiple OFPs—are subject to OFPs with a duration as long as 50 years.

To the extent that Bergstrom's facial challenge turns on the potential length of an OFP issued under subdivision 6a(b), the statute does nothing more than authorize a district court to issue an OFP with a duration "of up to 50 years." *See* Minn.Stat. § 518B.01, subd. 6a(b). It does not require, as Bergstrom appears to assume, that every extended OFP be for 50 years. In fact, the statute authorizes a court to issue an OFP of virtually any duration, so long as the OFP does not exceed 50 years. And even if an OFP carries a timeframe of up to 50 years, as occurred here, nothing prevents a serial abuser from moving to modify or vacate the terms and conditions of the OFP after 5 years. *See* Minn.Stat. § 518B.01, subd. 11(b) (2012). As a result, even if Bergstrom were correct that a statute *requiring* a court to issue a 50-year OFP would facially violate the First Amendment and Article I, Section 3 of the Minnesota Constitution—a question not before us today—the *discretionary* nature of subdivision 6a(b) indicates that a substantial number of its applications are *constitutional. See Wash. State Grange,* 552 U.S. at 457, 128 S.Ct. 1184 (recognizing that the existence of constitutional applications of a state initiative was "fatal" to the claim that the initiative was facially unconstitutional under the First Amendment).

Moreover, the statute permits only a limited class of individuals to seek, and receive protection from, an OFP. As we have held, only a victim of domestic abuse may seek an initial OFP. *Schmidt,* 818 N.W.2d at 529. The statute, in turn, limits the relief available under an OFP to matters affecting the victim and members of

the victim's household and family. Minn. Stat. § 518B.01, subds. 6(a)(1)-(15), 6a(b) (2012). These provisions place identifiable boundaries around the potential speech that an extended OFP may restrict.

Accordingly, because the statute requires a district court to make specific findings, vests discretion in the district court to determine the length of an extended OFP, and places appropriate limits on the coverage of an extended OFP, we reject Bergstrom's facial challenge to subdivision 6a(b) under the First Amendment and Article I, Section 3 of the Minnesota Constitution.

### C.

Bergstrom also challenges Minn. Stat. § 518B.01, subd. 6a, as applied to him. To evaluate Bergstrom's as-applied challenge, we again apply *Madsen,* but do so in the context of the specific circumstances presented by this case. Those circumstances include the facts underlying the issuance of the 2008 OFP, the terms and conditions of the extended OFP, and the findings made by the district court when it extended the 2008 OFP for up to 50 years. The constitutionality of the restrictions placed on Bergstrom thus turns on whether, in light of the facts and circumstances underlying the 2008 OFP and its 2010 extension, the terms and conditions of the extended OFP burden no more speech than necessary to serve a significant state interest.

We begin our analysis with Rew. The district court initially granted the 2008 OFP based on domestic abuse experienced by Rew. In the 2008 OFP petition, Rew stated that she was "afraid for [her] safety" and "fear[ed] imm[i]nent harm" because, among other things, Bergstrom pushed her down a set of stairs when she

was 8 months pregnant with their oldest child. *See* Minn.Stat. § 518B.01, subd. 2(a) (defining "domestic abuse" as "physical harm, bodily injury, or assault" or "the infliction of fear of imminent physical harm, bodily injury, or assault"). Bergstrom consented to the 2008 OFP with the understanding that it would be enforced "as if there was an admission or finding of domestic abuse." The court did not make any specific factual findings apart from accepting Bergstrom's admission.

When the district court extended the OFP in 2010, the court did not receive testimony, relying instead on the fact that it had issued OFPs against Bergstrom in 2002 and 2007 at Rew's request, that Bergstrom had recently been released from incarceration, and that Bergstrom had been convicted of violation of an OFP on at least three prior occasions. The record, considered as a whole, establishes that Bergstrom has abused Rew and repeatedly disregarded prior no-contact orders, satisfying the requirements for an extended OFP under subdivision 6a(b).

The record, considered as a whole, also establishes that, with respect to Rew, the extended OFP burdens no more speech than necessary to serve a significant state interest. In Rew's 2008 application for an OFP, she alleged that Bergstrom had committed a variety of "specific acts of domestic abuse." Those acts included violating prior OFPs, hacking into her email account, hiding near her with binoculars, committing fifth-degree domestic assault against her, pushing her down the stairs when she was 8 months pregnant, and threatening not to return the children to her after a visitation. Rew also placed an "X" in a box on the application form to indicate that Bergstrom had "inflicted or threatened domestic abuse" upon her.

Rather than contest the issuance of the 2008 OFP, Bergstrom agreed that it would be "enforced as if there was an admission or finding of domestic abuse." It is unnecessary to decide whether Bergstrom's agreement to the issuance of the 2008 OFP constituted an admission to all of the specific allegations in Rew's 2008 petition because, at a minimum, it establishes that Bergstrom had committed domestic abuse against Rew. Moreover, the undisputed record demonstrates that Bergstrom has repeatedly violated OFPs.

In light of the record, we conclude that, although the terms and conditions of the extended OFP are broad, they are no broader than necessary. The extended OFP contains a broad prohibition that prevents Bergstrom from contacting Rew, "whether in person, with or through other persons, by telephone, letter, electronic means, or in any other way." It also forbids Bergstrom from coming within 120 yards of Rew's residence, workplace, or church, and requires him to remain at least 50 yards from Rew in all public places. Yet, other than including similar restrictions regarding Bergstrom's contact with and proximity to the parties' minor children, the extended OFP does not prevent Bergstrom from expressing his ideas and messages in a number of other forums and ways. Thus, while the extended OFP burdens Bergstrom's speech, the district court carefully crafted the specific terms and conditions of the extended OFP in light of the significant government interest at stake: the prevention of future domestic abuse against Rew. Accordingly, we conclude that the provisions of the extended OFP that restrict Bergstrom's contact with Rew satisfy *Madsen* because the incidental restrictions on Bergstrom's speech are no greater than necessary to satisfy the State's significant interest in protecting Rew from domestic abuse.

The adequacy of the record is less clear, however, with respect to the restrictions in the extended OFP that limit Bergstrom's contact with the parties' minor children. The extended OFP restricts all contact with the parties' "minor child(ren)" until Bergstrom completes 3 months of therapy, the children complete 6 months of therapy, and Bergstrom successfully petitions the court for a restoration of his parenting time. Because the extended OFP repeatedly refers to the parties' "minor" children in describing the terms and conditions of the extended OFP, we interpret the restrictions on Bergstrom's contact with each child as applicable only until the child reaches the age of 18, at which point the child will no longer be a minor. Our interpretation of the extended OFP means that Bergstrom will be subject to the conditions that limit his contact with the children for only a few years—a period of approximately 2 more years for T.C.B., who is 16 years old, and 4 more years for D.S.B., who is 14 years old.[5] And, of course, the district court can decide to vacate those conditions of the extended OFP even earlier if Bergstrom and the children complete their individual-therapy obligations.

Under our interpretation of the extended OFP, the restrictions in the extended OFP that relate to the minor children are much shorter in duration than those that relate to Rew. Nevertheless, the record does not contain sufficient findings for us to conclude that the restrictions on Bergstrom's contact with the minor children burden no more speech than necessary to advance a significant state interest, such as, for example, protecting Rew or the minor children from domestic abuse.

The 2008 petition does not definitively allege that Bergstrom committed domestic abuse against the two minor children (as opposed to against Rew herself). The closest it comes to alleging domestic abuse against the children is paragraph 7, which states that Bergstrom "has inflicted or threatened domestic abuse ☒ upon me and/or upon ☐ the minor child(ren) named here: [T.C.B.] 8/29/97 [and D.S.B.] 7/11/99." Although the minor children's names are listed, there is an "X" in only the first box ("upon me"), and not in the second box ("upon the minor child(ren)"). The omission is not a mere technicality: Bergstrom's agreement that the OFP would be "enforced as if there was an admission or finding of domestic abuse" was the sole basis for determining that Bergstrom had committed domestic abuse. Therefore, in light of Rew's failure to affirmatively indicate that Bergstrom commit-

---

5. In an opinion dissenting in part, the Chief Justice disagrees with our decision to address Bergstrom's as-applied constitutional challenge to the extended OFP as it relates to the minor children. According to the Chief Justice, because Bergstrom challenged only a 50–year OFP, not an OFP that extends only until each child's eighteenth birthday, we should decline to address Bergstrom's as-applied constitutional challenge. The Chief Justice would therefore hold, in effect, that Bergstrom has somehow failed to preserve his as-applied constitutional challenge because he did not foresee that we would interpret the extended OFP as lasting only until each child's eighteenth birthday and then specifically argue that such a hypothetical disposi-

tion would violate the First Amendment. We do not require litigants, however, to foresee every possible hypothetical situation in order to preserve their arguments.

In addition, we have not addressed any arguments that venture beyond the matters raised in the parties' briefs. Bergstrom has argued at every stage of the litigation that an extended OFP violates his First Amendment rights, and Rew does not contend that Bergstrom has failed to preserve his First Amendment claim. Nor is an extended OFP with a maximum duration of 4 years for D.S.B. and 2 years for T.C.B. exempt from satisfying the requirements of the First Amendment.

ted domestic abuse against the minor children and the focus in Rew's petition on instances of domestic abuse committed against Rew personally, Bergstrom did not admit that he had committed domestic abuse against the children when he agreed to the 2008 OFP.

To be sure, Rew alleges in the petition that she feared for her children's safety and that Bergstrom pushed her down the stairs when she was 8 months pregnant with T.C.B., but the petition identifies no other instances of abuse directed toward the children.[6] Moreover, the lack of specific allegations of abuse against the minor children in the 2008 application cannot be remedied by the allegations in Rew's 2010 application for an extended OFP. After all, Bergstrom did not admit the allegations in

---

**6.** The Chief Justice argues that we are "rewrit[ing] the facts in the record." We respectfully disagree.

The Chief Justice reads too much into Rew's 2008 petition. We acknowledge that Rew alleged in the petition that Bergstrom pushed her down the stairs when she was pregnant, roughly 10 years before the date of the petition. Assuming that Bergstrom's conduct qualified as domestic abuse of one of the children, it is at best unclear whether an allegation of abuse 10 years earlier is sufficient, standing alone, to conclude that the restrictions in the extended OFP are no broader than *necessary* with respect to the children. It is also true that Rew alleged that, at some unspecified time or times, Bergstrom threatened not to return the children after a visitation. But the petition alleges that this threat was directed at Rew, not the children. Finally, Rew also alleged that she feared for the safety of the children, but she did not explain why she feared for their safety. And, in any event, a bare allegation of fear is insufficient to demonstrate that Bergstrom domestically abused the children. In short, even if we *assume* that Bergstrom admitted to each of the allegations in the petition when he agreed to the 2008 OFP, the allegations are insufficient to conclude that the terms and conditions of the extended OFP with respect to the children burden no more speech than necessary to protect Rew or the children from domestic abuse.

A 2008 guardian ad litem report, which documents the impressions of a guardian ad litem and is relied upon by the Chief Justice in her separate opinion, does not add much to the analysis for two reasons. First, the statements relied upon by the Chief Justice demonstrate only that the children were afraid of their father, which does not establish that Bergstrom domestically abused them. Second, it is doubtful that the report is even part of the record on appeal, which is defined in Minn. R. Civ.App. P. 110.01 as "[t]he papers *filed* in the trial court, the exhibits, and the transcript of the proceedings." (Emphasis added.) Although the report is physically located in the district court's file, so are a number of other documents that are not part of the record on appeal (including the judge's handwritten notes and what appears to be a memorandum to the judge from a law clerk). The guardian ad litem report does not bear a file stamp, the district court's register of actions does not show that the guardian ad litem (or any party) filed the report with the district court, and the district court's file does not indicate that the court admitted the report into evidence as an exhibit. Moreover, none of the parties have mentioned the report in their briefs or included it in their appendices or addenda. Perhaps the Chief Justice is right that the report was "submitted" to the district court, but Rule 110.01 refers to papers that were "*filed* in the trial court," not to papers that were "submitted" to the trial court. Accordingly, it is, at best, unclear whether the report is part of the record on appeal under Rule 110.01.

We do not mean to suggest that the allegations in the 2008 petition, if they are established or admitted in the district court on remand, would be irrelevant to determining whether the terms and conditions of the extended OFP with respect to the minor children survive First Amendment scrutiny. They *would* be relevant. Instead, we simply hold that it is the district court's responsibility, not ours, to make the findings necessary to resolve the constitutional challenge. *See, e.g., Dunn v. Nat'l Beverage Corp.,* 745 N.W.2d 549, 555 (Minn.2008) ("[A]ppellate courts may not sit as factfinders, and are not empowered to make or modify findings of fact." (citations omitted) (internal quotation marks omitted)).

Rew's application for an extended OFP, the district court took no testimony about them, and in deciding to issue the OFP, the district court did not rely on them. Indeed, the parties agreed at oral argument before this court that the record contained no evidence of domestic abuse against the minor children.[7]

We therefore have no findings from the district court that Bergstrom has ever abused the minor children or that the restrictions on Bergstrom's contact with the children are necessary to protect Rew or the minor children from domestic abuse. Nor do we have any findings under Minn. Stat. § 518B.01 with respect to any other significant state interest that could conceivably satisfy the *Madsen* framework.

Accordingly, the court of appeals erred when it affirmed the district court's denial of Bergstrom's First Amendment as-applied challenge to the provisions in the extended OFP that prohibit Bergstrom from having contact with the parties' minor children.

In sum, the record is sufficient to conclude that the extended OFP satisfies the First Amendment with respect to Rew, but insufficient to make such a conclusion with respect to the parties' minor children. To be clear, we conclude only that more findings are necessary to uphold the constitutionality of the extended OFP with respect to the children, not that the extended OFP as it relates to the children necessarily violates the First Amendment.[8] Accord-

7. In response to a question from the court about what the record indicated regarding domestic abuse of the children, counsel for Rew said that "since this was not a contested issue during the hearing that gave rise to this extension [of the OFP], there was no evidence regarding domestic abuse to the children."

In response to a question from the court seeking clarification, counsel for Rew explained: "There were allegations [of abuse to the children] in the petition. There was no evidence."

In yet another exchange with the court about the nature of any allegations of domestic abuse against the children, counsel for Rew stated:

I don't want to misstate that. What those allegations talk about is the children being present when things are occurring. There is no allegation of domestic abuse, in other words physical violence, imminent fear, other things like that, that are described in the petition.

8. Justice Anderson, in a concurring opinion, agrees that we should remand to the district court, but would do so for a different reason. Justice Anderson speculates that the district court may have intended only to impose temporary parenting-time restrictions under Minn.Stat. § 518B.01, subd. 6(a)(4), rather than issue an extended OFP in favor of the children. If so, then Justice Anderson says

that the record supports the constitutionality of the restrictions, but that we should remand "to permit the district court to explain its analysis."

Justice Anderson may be correct that the district court simply intended to impose temporary restrictions on Bergstrom's parenting time, rather than issue an extended OFP in favor of the children. But whatever the court meant to do, the fact remains that it did issue an extended OFP that not only imposed parenting-time restrictions on Bergstrom, but also directed Bergstrom, among other things, to stay 120 yards away from the children's schools and child-care locations. Notably, the parties do not make the argument that Justice Anderson advances about the district court's intentions. Under these circumstances, we must base our analysis on the district court's actions, rather than on speculation about the district court's intentions.

Perhaps the district court, on remand, will analyze the restrictions placed on Bergstrom along the lines suggested by Justice Anderson, and perhaps the 2008 guardian ad litem report upon which Justice Anderson relies will be filed with the district court or admitted as an exhibit at a hearing. *See supra* n. 5. Based on the record before us and the arguments made by the parties, however, we see no reason to declare in advance what evidence the district court should consider, or what conclusions it should reach in light of that evidence, on remand.

ingly, we reverse and remand to the district court for further findings as to whether the provisions burdening Bergstrom's speech to the children are necessary to serve a significant state interest.

## IV.

■ The third question presented by this case is whether the district court violated Bergstrom's procedural due process rights when it granted the extended OFP to Rew.[9] Both the United States Constitution and the Minnesota Constitution provide that no person shall be deprived of life, liberty, or property without due process of law. U.S. Const. amend. XIV, § 1; Minn. Const. art. I, § 7. Whether the government has violated an individual's procedural due process rights is a question of law that we review de novo. *See Carrillo v. Fabian,* 701 N.W.2d 763, 768 (Minn. 2005).

■ We conduct a two-step analysis to determine whether the government has violated an individual's procedural due process rights. *See Ky. Dept. of Corr. v. Thompson,* 490 U.S. 454, 460, 109 S.Ct. 1904, 104 L.Ed.2d 506 (1989). First, we identify whether the government has deprived the individual of a protected life, liberty, or property interest. *Id.; Carrillo,* 701 N.W.2d at 768. If the government's action does not deprive an individual of such an interest, then no process is due. *See Bd. of Regents of State Colleges v. Roth,* 408 U.S. 564, 570–71, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). On the other hand, if the government's action deprives an individual of a protected interest, then

the second step requires us to determine "whether the procedures followed by the [government] were constitutionally sufficient." *Swarthout v. Cooke,* —— U.S. ——, 131 S.Ct. 859, 861, 178 L.Ed.2d 732 (2011).

■ The first step is to determine whether the extended OFP deprived Bergstrom of a protected life, liberty, or property interest. In general, a parent has a liberty interest in the care, custody, and control of his or her children. *Baker,* 494 N.W.2d at 287; *see also Troxel v. Granville,* 530 U.S. 57, 66, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000). In this case, it is not clear from the record how—or even if—the extended OFP affects Bergstrom's liberty interest in the care, custody, and control of his children. The record indicates that the parties' marital-dissolution decree, not the OFPs, initially granted sole legal and physical custody of the minor children to Rew and that the OFPs simply reiterated the earlier custody determination. The record does not indicate, however, whether the extended OFP deprived Bergstrom of parenting time to which he was otherwise entitled. Given the uncertainty in the record, we will assume, for the sake of argument, that Bergstrom's liberty interest in the care, custody, and control of his two minor children was at stake during the proceedings on the extended OFP and that Bergstrom was entitled to constitutionally sufficient process before the district court deprived him of that liberty interest.

■ The second step in the procedural due process analysis is to determine whether the process afforded to Bergstrom was constitutionally sufficient. To

---

**9.** Although amici curiae The Family Innocence Project and Center for Parental Responsibility advance a substantive due process challenge, Bergstrom has never done so (apart from alluding, in a footnote in his opening brief, to the possible existence of such a challenge). Therefore, we need not, and do not, address whether the extended OFP violates Bergstrom's substantive due process rights.

assess the adequacy of specific procedures, the Supreme Court established a three-factor balancing test in *Mathews v. Eldridge*, which requires us to consider:

> [f]irst, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). Thus, if a protected life, liberty, or property interest is at stake, we must weigh the *Mathews* factors to determine what type of process is constitutionally due to a person deprived of such an interest. *Id.* The fundamental requirements of due process are notice and an "opportunity to be heard at a meaningful time and in a meaningful manner." *Id.* at 333, 96 S.Ct. 893 (citation omitted) (internal quotation marks omitted).

The first *Mathews* factor is the private interest at stake. *Id.* at 335, 96 S.Ct. 893. The Supreme Court has recognized that parents have a fundamental liberty interest in the care, custody, and control of their children. *Troxel*, 530 U.S. at 66, 120 S.Ct. 2054; *accord SooHoo v. Johnson*, 731 N.W.2d 815, 820 (Minn.2007). In *SooHoo*, we observed that the right of parents to the care, custody, and control of their children "is an interest far more precious than any property right" and "should not be interfered with except for grave and weighty reasons." 731 N.W.2d at 823 (citations omitted) (internal quotation marks omitted). The duration of the deprivation also is relevant to the first *Mathews* factor. *See Mackey v. Montrym*, 443 U.S. 1, 12, 99

S.Ct. 2612, 61 L.Ed.2d 321 (1979) (explaining that the duration of a driver's license suspension is relevant to the substantiality of the private interest at stake). Here, we have assumed that Bergstrom faced the possibility of a multiple-year deprivation of an interest in the care, custody, and control of his children. Accordingly, Bergstrom had a substantial private interest at stake.

The second *Mathews* factor is the risk of an erroneous deprivation of a protected interest under current procedures and the probable value, if any, of additional safeguards. 424 U.S. at 335, 96 S.Ct. 893. A court may extend an existing OFP only upon application of the person seeking relief and after notice to all parties and a hearing. Minn.Stat. § 518B.01, subd. 6a(a). At the hearing, the petitioner must demonstrate facts sufficient for a court to make at least two findings—one under subdivision 6a(a) and another under subdivision 6a(b)—before it can extend an existing OFP for up to 50 years. *Id.*, subd. 6a.

In this case, the district court held an initial hearing on Rew's application after providing notice to Bergstrom. The court also held a second hearing to address Bergstrom's motion to vacate the extended OFP. Counsel represented Bergstrom at both hearings. The process that Bergstrom received before the court granted the extended OFP—which consisted of notice followed by adversarial hearings before an impartial judicial officer at which Bergstrom appeared with counsel—constitutes the "full panoply of procedures" available in the judicial system. *See Kletschka v. Le Sueur Cnty. Bd. of Comm'rs*, 277 N.W.2d 404, 405 (Minn. 1979).

Bergstrom nevertheless argues that the process that he received was constitution-

ally insufficient for three reasons. First, he claims that he could not meaningfully challenge the existence of any of the criteria relied on by the district court when it granted the extended OFP. Second, to the extent that he could mount a meaningful defense, he asserts that the district court wrongfully excluded his evidence. Third, he contends that the statute provides insufficient process to those who are subject to the terms and conditions of an extended OFP because it is too difficult to modify an extended OFP once it is issued. None of Bergstrom's arguments demonstrates that the process he received was constitutionally deficient.

■ Bergstrom's first objection is really a substantive challenge to the criteria of Minn.Stat. § 518B.01, subd. 6a, disguised as a procedural due process claim. The district court relied on the following three allegations from Rew's application to grant the extended OFP: (1) the court had granted OFPs against Bergstrom on Rew's behalf on three prior occasions; (2) the court had convicted Bergstrom three times of violation of an OFP; and (3) Bergstrom recently had been released from incarceration. At the hearing on the extended OFP, Bergstrom had the opportunity to challenge each of Rew's allegations. Had any of the allegations been untrue, Bergstrom could have adduced evidence to prove them false. For example, if Rew's allegation that Bergstrom had recently been released from incarceration had been false, then Bergstrom could have testified or presented documentary evidence to disprove the allegation. Unfortunately for Bergstrom, however, each of the facts underlying the district court's decision to grant an extended OFP was true, and Bergstrom has never claimed otherwise.

Bergstrom's real complaint, therefore, is that the criteria used to extend an OFP for up to 50 years are unfair because many of them had already been judicially determined. However, an individual's right to procedural due process is not violated simply because the relevant facts in a judicial proceeding are easily proven by reference to prior proceedings. Nor does an individual necessarily have a procedural due process right to collaterally attack facts that a court has found in a prior judicial proceeding—such as the three previous findings that Bergstrom had violated an OFP. *See Sawh v. City of Lino Lakes,* 823 N.W.2d 627, 635 (Minn.2012) (concluding that because a city code required "only the *existence* of a 'potentially dangerous' designation" before the city could declare the appellant's dog "dangerous," the city was not required to provide an opportunity to the appellant to challenge the *correctness* of that earlier designation at a later hearing); *see also United States v. Mendoza–Lopez,* 481 U.S. 828, 839, 107 S.Ct. 2148, 95 L.Ed.2d 772 (1987) (holding that due process requires "that a collateral challenge to the use of a deportation proceeding as an element of a criminal offense must be permitted where the deportation proceeding effectively eliminates the right of the alien to obtain judicial review"). In sum, Bergstrom's first objection does not really implicate procedural due process at all, much less demonstrate that there has been a violation of his procedural due process rights.

■ Bergstrom's second objection is that the proceeding violated his due process rights because the district court wrongfully excluded his evidence at the hearing. Specifically, Bergstrom attempted to present his own testimony and the testimony of two other witnesses to refute

the allegations underlying a 2010 incident in which Bergstrom allegedly had violated an OFP. Before deciding whether to hear the proposed testimony, the district court permitted Bergstrom to make an offer of proof. After considering the offer of proof, the district court ruled that the testimony was irrelevant in light of Rew's evidence that clearly established the existence of other facts that would warrant an extended OFP.

■■■ Under these circumstances, the district court's decision to exclude Bergstrom's evidence did not create a substantial risk that the court erroneously deprived Bergstrom of a liberty interest. District courts have broad discretion to admit or exclude evidence on a number of grounds, including relevance. *State v. Brown*, 739 N.W.2d 716, 720 (Minn.2007). In this case, the court excluded Bergstrom's evidence only after it entertained Bergstrom's offer of proof and considered the offer of proof in the context of Rew's evidence and the statutory requirements for the issuance of an extended OFP. In making its decision to exclude the evidence, the court effectively decided that the testimony would have no effect on its decision about whether to issue the extended OFP. *See State v. LeDoux*, 770 N.W.2d 504, 514 (Minn.2009) (stating that, at a bail hearing, "a defendant may only call a witness if the defendant makes a persuasive offer of proof that the witness's testimony, when considered in the context of all the other relevant available information, will lead to either release without bail or a reduction in the bail amount to a level that would result in the defendant's release"). Indeed, as the court explained, it was unnecessary to consider the 2010 incident at all because the remainder of Rew's evidence provided independent justifica-

tion for the grant of an extended OFP under Minn.Stat. § 518B.01, subd. 6a. Although the court certainly *could have* admitted the testimony, neither the United States Constitution nor the Minnesota Constitution required it to do so under the circumstances. *See Anderson v. Sternes*, 243 F.3d 1049, 1054 (7th Cir.2001) (recognizing that even the presence of evidentiary error does not necessarily result in a violation of due process).

Bergstrom's third objection is that the statute makes it too difficult to modify or vacate an extended OFP once it is issued. Under Minn.Stat. § 518B.01, subd. 11(b), a person who is subject to an extended OFP may seek its modification if it "has been in effect for at least five years and the respondent has not violated the order during that time." To prevail on a motion to modify an extended OFP, the respondent must "prov[e] by a preponderance of the evidence that there has been a material change in circumstances and that the reasons upon which the court relied in granting or extending the order for protection no longer apply and are unlikely to occur." Minn.Stat. § 518B.01, subd. 11(b).

■■■ At this point, Bergstrom's third objection is largely theoretical because he has never applied to modify the extended OFP under Minn.Stat. § 518B.01, subd. 11(b). To be sure, Bergstrom filed a motion under Minn. R. Civ. P. 60.02 to vacate the judgment that extended the OFP for up to 50 years, but that motion was not based on any of the grounds delineated in Minn.Stat. § 518B.01, subd. 11(b), nor was it characterized as a motion seeking relief under that provision. We will therefore treat Bergstrom's third objection as a facial challenge to the validity of subdivision 11(b). To succeed on a facial challenge, Bergstrom must meet the "heavy burden

of proving that the legislation is unconstitutional in all applications." *Minn. Voters Alliance v. City of Minneapolis,* 766 N.W.2d 683, 696 (Minn.2009).

██ Similar to the procedure to extend an OFP, the procedure to modify or vacate an OFP begins with an application and is followed by "notice to all parties" and a hearing. Minn.Stat. § 518B.01, subd. 11(a). The hearing under subdivision 11(b) occurs before an impartial judge and the decision rendered by the court is subject to the general rules governing appellate review. Bergstrom makes no argument that existing *procedures* are inadequate to protect his rights. Rather, he argues that it is too difficult to satisfy the *substantive* standard that applies to an application brought under subdivision 11(b). Bergstrom's third objection is thus another veiled substantive challenge disguised as a procedural due process claim.

Even properly characterized, however, Bergstrom's challenge fails. It is simply not true that a respondent can never prove that there has been a material change of circumstances and that the reasons underlying the decision to grant the extended OFP no longer apply and are unlikely to recur. On the contrary, a prior OFP or a conviction of violation of an OFP can be vacated on appeal, and nothing prevents Bergstrom or any other person subject to the terms and conditions of an extended OFP from filing a petition for postconviction relief in an attempt to overturn a prior conviction of violation of an OFP. Moreover, the OFP in this case provides a separate path for Bergstrom to obtain partial relief from the restrictions it imposes: Bergstrom can regain parenting time by completing the mandated individual therapy and applying to the district court for relief.

In sum, Bergstrom has not shown that the procedures governing the extension of an OFP create a risk of "an erroneous deprivation of [his liberty interest]" or that "additional or substitute procedural safeguards" are necessary. *Mathews,* 424 U.S. at 335, 96 S.Ct. 893. Indeed, Bergstrom fails to argue that any additional *procedures* are necessary under Minn.Stat. § 518B.01 to adequately protect his rights.

In light of the lack of any meaningful argument under the second *Mathews* factor that additional procedures are necessary to protect Bergstrom from an erroneous deprivation of his liberty interest, we address only briefly the third *Mathews* factor: "the Government's interest, including ... the fiscal and administrative burdens that the additional or substitute procedural requirements would entail." 424 U.S. at 335, 96 S.Ct. 893. We first observe that the State has a "strong interest in preventing violence in a domestic setting," *Baker,* 494 N.W.2d at 288, and that Bergstrom does not dispute the significance of this interest. We also note that Minn.Stat. § 518B.01, subd. 6a, already contains a number of procedural safeguards—including notice, an adversarial hearing in the district court, and the opportunity for appellate review—that adequately protect Bergstrom's liberty interest. Accordingly, we conclude that the district court did not violate Bergstrom's procedural due process rights when it granted the extended OFP to Rew.

### V.

The fourth question presented by this case is whether the extended OFP violates the prohibition on ex post facto laws in either the United States Constitution or the Minnesota Constitution. U.S. Const. art. I, § 10; Minn. Const. art. I, § 11.

Whether Minn.Stat. § 518B.01, subd. 6a(b), violates the constitutional prohibition on ex post facto laws is a legal question that we review de novo. *See Schatz v. Interfaith Care Ctr.,* 811 N.W.2d 643, 657 (Minn.2012) (recognizing that an appellate court applies de novo review to determine whether the application of a statute is constitutional).

■■■■ The United States Constitution provides that "[n]o State shall ... pass any ... ex post facto Law." U.S. Const. art. I, § 10. The Minnesota Constitution likewise states that "[n]o ... ex post facto law ... shall be passed." Minn. Const. art. I, § 11. Both provisions prohibit laws that "render[ ] an act punishable in a manner in which it was not punishable when it was committed." *Starkweather v. Blair,* 245 Minn. 371, 386, 71 N.W.2d 869, 879 (1955). To qualify as an ex post facto law, a statute must be a criminal or penal law, it must not be "merely procedural," it must "apply to events occurring before its enactment, and it must disadvantage the offender affected by it." *Weaver v. Graham,* 450 U.S. 24, 29 & n. 12, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981); *State v. Moon,* 463 N.W.2d 517, 521 (Minn.1990).

Bergstrom contends that Minn.Stat. § 518B.01, subd. 6a(b), which allows a court to extend an OFP for up to 50 years, constitutes an ex post facto law because the statute does not limit the court to the consideration of only facts that postdate the passage of the statute. Indeed, when the district court granted an extended OFP to Rew, the court relied upon facts that predated the effective date of the statute, including two of Bergstrom's convictions of violation of an OFP. The third conviction occurred just 2 days after the statute became effective, but it is undisputed that the acts underlying Bergstrom's

conviction occurred before the statute's effective date. Thus, Bergstrom is correct when he observes that the district court retrospectively applied subdivision 6a(b) to him when it granted the extended OFP. *See Lynce v. Mathis,* 519 U.S. 433, 441, 117 S.Ct. 891, 137 L.Ed.2d 63 (1997) (defining retrospective application as applying a law to events occurring before its enactment and disadvantaging the offender affected by it). The statute is also not merely procedural because it alters Bergstrom's substantial rights, including his freedom of speech. *See Weaver,* 450 U.S. at 29 n. 12, 101 S.Ct. 960. The only question in dispute, therefore, is whether subdivision 6a(b) qualifies as a criminal or penal statute under either the United States Constitution or the Minnesota Constitution. *See Collins v. Youngblood,* 497 U.S. 37, 41, 110 S.Ct. 2715, 111 L.Ed.2d 30 (1990) (stating that "the constitutional prohibition on *ex post facto* laws applies only to penal statutes").

### A.

■■■■ We begin with Bergstrom's ex post facto claim under Article I, Section 10 of the United States Constitution. To determine whether a statute constitutes a criminal or penal law, we first "ascertain whether the legislature meant the statute to establish 'civil' proceedings." *Kansas v. Hendricks,* 521 U.S. 346, 361, 117 S.Ct. 2072, 138 L.Ed.2d 501 (1997). If the Legislature indicated, as a matter of statutory interpretation, that an extended OFP is a criminal penalty, then the district court violated Bergstrom's constitutional rights when it retrospectively applied subdivision 6a(b) to Bergstrom. *See Smith v. Doe,* 538 U.S. 84, 92–93, 123 S.Ct. 1140, 155 L.Ed.2d 164 (2003). If, on the other hand, the Legislature intended the regulatory scheme to be civil and nonpunitive, then

we must proceed to the second step of the analysis to determine "whether the statutory scheme [is] so punitive either in purpose or effect as to negate th[e Legislature's] intention." *United States v. Ward,* 448 U.S. 242, 248–49, 100 S.Ct. 2636, 65 L.Ed.2d 742 (1980). "Because we ordinarily defer to the legislature's stated intent, only the clearest proof will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty." *Smith,* 538 U.S. at 92, 123 S.Ct. 1140 (citations omitted) (internal quotation marks omitted).

We begin with the first step, which is to determine whether the Legislature indicated that an extended OFP is a civil remedy or a criminal penalty. *See id.* Although the Legislature did not explicitly declare whether an extended OFP is a criminal or civil sanction, four features of Minn.Stat. § 518B.01 indicate that the Legislature intended to establish a civil remedy.

First, a private party initiates the proceedings for an extended OFP through "an application for subsequent relief" and the relief obtained is an "order for protection." Minn.Stat. § 518B.01, subd. 6a. The use of these remedial, nonpunitive terms in the statute and the absence of the State of Minnesota as a party in such proceedings are indicative of a civil remedy, not a criminal penalty. *Cf. United States v. Halper,* 490 U.S. 435, 451, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989) ("The protections of the Double Jeopardy Clause are not triggered by litigation between private parties."), *overruled on other grounds, Hudson v. United States,* 522 U.S. 93, 118 S.Ct. 488, 139 L.Ed.2d 450 (1997). Second, the statute that authorizes an extended OFP is not located in the criminal code, but in its own chapter labeled "Domestic Abuse," which contains a number of indisputably civil provisions, including the standards for domestic-abuse counseling programs. Minn.Stat. § 518B.01–.02 (2012); *see also Smith,* 538 U.S. at 94, 123 S.Ct. 1140 (noting that the placement of a statute in the civil code can be an important indication of a legislature's intent to create a nonpunitive, regulatory measure). Third, the statute does not require an abuser to be convicted of a crime as a prerequisite to the issuance of an extended OFP. *See* Minn. Stat. § 518B.01, subd. 6a(b); *see also Hendricks,* 521 U.S. at 362, 117 S.Ct. 2072 (noting that one indication that Kansas's regime for commitment of sex offenders was civil was that a criminal conviction was not a prerequisite to commitment). Fourth, we already have recognized that the Legislature enacted Minn.Stat. § 518B.01 for a remedial, nonpunitive purpose: to protect victims of domestic abuse from their abusers, not to punish abusers for their conduct. *Burkstrand v. Burkstrand,* 632 N.W.2d 206, 211 (Minn.2001) (noting that the OFP statute "was enacted as one means to protect [domestic abuse] victims"); *see also Hendricks,* 521 U.S. at 361, 117 S.Ct. 2072 ("Nothing on the face of the statute suggests that the legislature sought to create anything other than a civil ... scheme designed to protect the public from harm."). For these four reasons, we conclude that the Legislature has indicated that an extended OFP is a civil remedy.

We now move to the second step, which requires us to determine whether an extended OFP is so punitive, either in its purpose or effect, "as to transform what was clearly intended as a civil remedy into a criminal penalty." *Hudson,* 522 U.S. at 99, 118 S.Ct. 488 (citation omitted) (internal quotation marks omitted). In making that determination, we rely on the seven factors from *Kennedy v. Mendoza–Martinez*:

[1] [w]hether the sanction involves an affirmative disability or restraint, [2] whether it has historically been regarded as a punishment, [3] whether it comes into play only on a finding of *scienter*, [4] whether its operation will promote the traditional aims of punishment—retribution and deterrence, [5] whether the behavior to which it applies is already a crime, [6] whether an alternative purpose to which it may rationally be connected is assignable for it, and [7] whether it appears excessive in relation to the alternative purpose assigned.

372 U.S. 144, 168–69, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963); *see also Smith*, 538 U.S. at 97, 123 S.Ct. 1140 (applying the *Mendoza–Martinez* factors to an ex post facto challenge to determine whether a statute created a criminal penalty). The *Mendoza–Martinez* factors are neither exhaustive nor dispositive; rather, they serve as useful guideposts to determine whether a statute creates a civil or criminal sanction. *See Ward*, 448 U.S. at 249, 100 S.Ct. 2636.

The first *Mendoza–Martinez* factor is "[w]hether the sanction involves an affirmative disability or restraint." 372 U.S. at 168, 83 S.Ct. 554. The classic affirmative disability or restraint is "the infamous punishment of imprisonment" that often accompanies criminal statutes. *Flemming v. Nestor*, 363 U.S. 603, 617, 80 S.Ct. 1367, 4 L.Ed.2d 1435 (1960) (citation omitted) (internal quotation marks omitted). While none of the forms of relief in Minn.Stat. § 518B.01, subd. 6a, impose a restraint approaching the level of imprisonment, many of the available remedies in the statute impose an affirmative disability or restraint. For example, an extended OFP may "prohibit the abusing party from having any contact with the petition-er, whether in person, by telephone, mail or electronic mail or messaging, through electronic devices, through a third party, or by any other means." Minn.Stat. § 518B.01. subd. 6a(b). Such a limitation—which the district court imposed on Bergstrom in the extended OFP—imposes an affirmative disability or restraint because it often eliminates any opportunity for the abusing party to interact with the victim and members of the victim's family and household. Therefore, the first *Mendoza–Martinez* factor favors the conclusion that an extended OFP is a criminal penalty.

The second *Mendoza–Martinez* factor is whether the sanction "has historically been regarded as a punishment." 372 U.S. at 168, 83 S.Ct. 554. There is no evidence that an OFP has been regarded in the nation's history and traditions as a punishment. *See Smith*, 538 U.S. at 97–99, 123 S.Ct. 1140. Although OFPs are of relatively recent vintage, they historically have been regarded as remedial and nonpunitive in light of their purpose to protect the victim and members of the victim's family and household from domestic abuse. *See Burkstrand*, 632 N.W.2d at 211. For that reason, a number of courts have concluded that the imposition of an OFP is not a criminal penalty. *See, e.g., Coburn v. Coburn*, 342 Md. 244, 674 A.2d 951, 955 (1996) (explaining that the goals of the Maryland domestic-abuse statute are "preventive, protective and remedial, not punitive"); *Cooke v. Naylor*, 573 A.2d 376, 377 (Me.1990) (explaining that a domestic-abuse protective order "is historically an equitable remedy, very similar to an injunction, that regulates the defendant's conduct ... without imposing any punishment per se for that conduct" (citation omitted)). Therefore, the second *Mendoza–Martinez* factor favors the conclusion that an extended OFP is a civil remedy.

The third *Mendoza–Martinez* factor is whether the sanction "comes into play only on a finding of *scienter*." 372 U.S. at 168, 83 S.Ct. 554. While Bergstrom's underlying convictions for violation of an OFP required the State to prove that Bergstrom knowingly violated an OFP, *see* Minn.Stat. § 518B.01, subd. 14(b), the imposition of an extended OFP does not require a finding of scienter. Indeed, as we note above, a criminal conviction for violation of an OFP is not necessary to impose an extended OFP, and by logical extension, a finding of scienter is also unnecessary. *See* Minn.Stat. § 518B.01, subd. 6a(b); *see also Ward*, 448 U.S. at 256, 100 S.Ct. 2636 (Blackmun, J., concurring in the judgment) (noting that there was no scienter requirement on the face of the challenged statute). Thus, the third *Mendoza–Martinez* factor favors the conclusion that an extended OFP is a civil remedy.

The fourth *Mendoza–Martinez* factor is whether the sanction's "operation will promote the traditional aims of punishment—retribution and deterrence." 372 U.S. at 168, 83 S.Ct. 554. Although an extended OFP unquestionably deters abusers from abusing their victims and "curtail[s] the harm one household member may be doing to the other," *Baker*, 494 N.W.2d at 285, even the deterrent features of an extended OFP serve a largely civil rather than criminal purpose by "protect[ing] victims of domestic assault." *Id.; see also Hudson*, 522 U.S. at 105, 118 S.Ct. 488 ("To hold that the mere presence of a deterrent purpose renders such sanctions 'criminal' ... would severely undermine the Government's ability to engage in effective regulation...."). Moreover, there is no evidence that an extended OFP has a retributive purpose. Therefore, the fourth *Mendoza–Martinez* factor favors the conclusion that an extended OFP is a civil remedy.

The fifth *Mendoza–Martinez* factor is whether the behavior to which the sanction applies "is already a crime." 372 U.S. at 168, 83 S.Ct. 554. The fifth factor is entitled to little weight in the analysis because, although an extended OFP can be predicated on "past conduct, which was, and is, a crime, ... [t]he obligations the statute imposes ... [are] not predicated upon some present or repeated violation." *Smith*, 538 U.S. at 105, 123 S.Ct. 1140. Therefore, the fifth *Mendoza–Martinez* factor does not favor either conclusion.

The sixth *Mendoza–Martinez* factor is "whether an alternative purpose" may be rationally assigned to the sanction. 372 U.S. at 168–69, 83 S.Ct. 554. An extended OFP can serve a number of civil, nonpunitive purposes, which include, among others, the facilitation of ongoing treatment and counseling for persistent domestic abusers, the protection of the safety and best interests of children through the modification of parenting-time and custody arrangements, and the delivery of restitution and monetary support to victims of domestic abuse. *See* Minn.Stat. § 518B.01, subd. 6 (describing the various forms of relief that may be granted in an OFP). Moreover, Bergstrom does not dispute that an extended OFP has the "legitimate nonpunitive purpose" of promoting public safety. *Smith*, 538 U.S. at 102–03, 123 S.Ct. 1140. Therefore, the sixth *Mendoza–Martinez* factor favors the conclusion that an extended OFP is a civil remedy.

The seventh and final *Mendoza–Martinez* factor is whether the sanction appears excessive in relation to the alternative purposes assigned to it. 372 U.S. at 169, 83 S.Ct. 554. The extension of an OFP for up to 50 years may be, in some cases, excessive in relation to the alternative purposes identified above. However,

"[t]he excessiveness inquiry of [ ] *ex post facto* jurisprudence is not an exercise in determining whether the legislature has made the best choice possible to address the problem it seeks to remedy. The question is whether the regulatory means chosen are reasonable in light of the non-punitive objective." *Smith,* 538 U.S. at 105, 123 S.Ct. 1140. Thus, even though the duration of an extended OFP may be excessive in some cases, it is significant that a district court has the discretion to extend an OFP for a period shorter than 50 years, Minn.Stat. § 518B.01, subd. 6a(b), and that a court may modify or vacate an extended OFP after 5 years, Minn.Stat. § 518B.01, subd. 11(b). Moreover, the OFP statute applies to only the most persistent domestic abusers—those who have a demonstrated history of either repeated OFP violations *or* repeated conduct against the same petitioner that has required the issuance of multiple OFPs. In light of the "alternative purpose assigned" to the remedy, therefore, an extended OFP might not be particularly excessive with respect to serial abusers. Nevertheless, the seventh *Mendoza–Martinez* factor leans in favor of the conclusion that an extended OFP is a criminal penalty.

■ Only two of the seven *Mendoza–Martinez* factors favor the conclusion that an extended OFP is a criminal penalty: it involves an affirmative disability or restraint and, in some cases, it may be excessive in relation to the alternative purposes assigned to it. By contrast, four of the factors favor treating an extended OFP as a civil remedy, and the remaining factor is neutral. Because "only the clearest proof will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty," *Smith,* 538 U.S. at 92, 123 S.Ct. 1140 (cita-

tion omitted) (internal quotation marks omitted), we conclude that an extended OFP is a civil remedy. Accordingly, there has been no violation of the United States Constitution's prohibition on ex post facto laws in this case.

**B.**

Bergstrom also raises a state constitutional challenge to Minn.Stat. § 518B.01, subd. 6a(b), based on the ex post facto clause of the Minnesota Constitution. Minn. Const. art. I, § 11. Although we have never squarely decided whether the Minnesota Constitution's ex post facto clause provides greater protection than its federal counterpart, we long ago observed that the "language of our state constitution on [ex post facto laws] is [materially] identical with that of the constitution of the United States." *State v. Ryan,* 13 Minn. 370, 375–76 (Gil. 343, 348) (1868).

The central question, therefore, is whether we should apply the federal ex post facto analysis to Bergstrom's state ex post facto claim. Two possibilities exist. The first is to apply the federal analysis to Bergstrom's federal claim, as we must, and then adopt some other analysis to distinguish criminal penalties from civil remedies under the Minnesota Constitution. The other is to treat the two claims identically. The latter option is more consistent with our general approach to state constitutional questions.

■ We generally do not construe the Minnesota Constitution to provide more protection for individual rights than the United States Constitution "unless there is a principled basis to do so." *Kahn v. Griffin,* 701 N.W.2d 815, 824 (Minn.2005). The text of the two provisions does not provide a principled basis to depart from

Supreme Court precedent because the two provisions contain virtually "identical" language. *Ryan,* 13 Minn. at 376 (Gil. at 348).

 Because the language of the two constitutional provisions is substantively identical, we will only consider a departure from Supreme Court precedent if: (1) the Supreme Court "has made a sharp or radical departure from its previous decisions" and we "discern no persuasive reason to follow such a departure"; (2) the Supreme Court has retrenched on a Bill of Rights issue; or (3) Supreme Court precedent "does not adequately protect our citizens' basic rights and liberties." *Kahn,* 701 N.W.2d at 828. None of those circumstances is present here. Far from retrenching or sharply or radically departing from precedent, the Supreme Court has never applied the Ex Post Facto Clause of the United States Constitution to civil proceedings and remedies, *see Calder v. Bull,* 3 U.S. 386, 391, 3 Dall. 386, 1 L.Ed. 648 (1798), and its approach to distinguishing between criminal penalties and civil remedies has remained largely unchanged over time, *see, e.g., Helvering v. Mitchell,* 303 U.S. 391, 399–400, 58 S.Ct. 630, 82 L.Ed. 917 (1938). Moreover, Bergstrom does not make any argument that the federal framework would inadequately protect our citizens' rights and liberties under the Minnesota Constitution. Accordingly, because we can discern no principled reason, textual or otherwise, to treat the prohibition on ex post facto laws in the Minnesota Constitution any differently than its federal counterpart, we conclude that there has been no violation of the Minnesota Constitution's ex post facto clause in this case.

## VI.

 The fifth and final question presented by this case is whether the ex-tended OFP violates the Double Jeopardy Clause of either the United States Constitution or the Minnesota Constitution. U.S. Const. amend. V; Minn. Const. art. I, § 7. The Double Jeopardy Clause of the United States Constitution states that no "person [shall] be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. Using substantially similar language to the United States Constitution, Article I, Section 7 of the Minnesota Constitution provides that "no person shall be put twice in jeopardy of punishment for the same offense." Each constitutional provision protects both against multiple punishments for the same offense, and against a second prosecution after an acquittal or conviction. *See State v. Jeffries,* 806 N.W.2d 56, 60–61 (Minn. 2011). We review Bergstrom's double-jeopardy challenge de novo. *See State v. Large,* 607 N.W.2d 774, 778 (Minn.2000).

Bergstrom argues that the extended OFP violates his double-jeopardy rights because it amounts to an additional punishment for his three prior criminal convictions of violation of an OFP. Bergstrom, however, overlooks a critical fact: Rew, a private party, obtained the OFP through private litigation in which the State was not a party. Bergstrom has not identified, and we have not found, any case law extending an individual's double-jeopardy rights to invalidate relief obtained by one private party against another.

 The reason is that the Supreme Court has declared that "[t]he protections of the Double Jeopardy Clause are not triggered by litigation between private parties." *Halper,* 490 U.S. at 451, 109 S.Ct. 1892. Although the Court has not provided any further explanation of its statement in *Halper,* the United States Court of Appeals for the Fifth Circuit has provided a justification for the rule:

The rationale behind the protection of the Double Jeopardy Clause rests upon the doctrine that the Government or the sovereign with all of its power should not be allowed to make repeated attempts to convict an individual for an alleged offense, or subject him to multiple punishments. It is the conduct or actions of the Government which the Double Jeopardy Clause seeks to limit.

In order for the Double Jeopardy Clause to have any application, there must be actions by a sovereign, which place an individual twice in jeopardy. The Double Jeopardy Clause does not apply to actions involving private individuals.

*United States v. Beszborn,* 21 F.3d 62, 67 (5th Cir.1994). In light of *Halper,* Bergstrom's federal double-jeopardy claim fails because the sovereign was not involved in obtaining the extended OFP.

As with the ex post facto analysis, this case requires us to again consider whether to extend the Supreme Court's analysis to an analogous provision of the Minnesota Constitution. Historically, we have interpreted Minnesota's Double Jeopardy Clause to be coextensive with its federal counterpart. *See, e.g., State v. Castillo–Alvarez,* 836 N.W.2d 527, 535–36 (Minn. 2013) (adopting the dual-sovereignty doctrine for double-jeopardy challenges under the Minnesota Constitution); *State v. Hanson,* 543 N.W.2d 84, 87–88 (Minn.1996) (following the Supreme Court's lead in re-

placing the double-jeopardy test from *Ward,* 448 U.S. at 248–49, 100 S.Ct. 2636, with the "solely deterrent/retributive" test from *Halper,* 490 U.S. at 448–49, 109 S.Ct. 1892).[10] We have done so in large part because the Double Jeopardy Clause of the Minnesota Constitution contains "substantially similar language" to its counterpart in the United States Constitution. *Castillo–Alvarez,* 836 N.W.2d at 535. In fact, it is fair to say that the language of the two provisions is, in all material respects, identical. *Compare* U.S. Const. amend. V ("[N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb. . . ."), *with* Minn. Const. art. I, § 7 ("[N]o person shall be put twice in jeopardy of punishment for the same offense. . . ."). There is no textual basis, therefore, for us to depart from Supreme Court precedent. *See Kahn,* 701 N.W.2d at 824 (explaining that "we will not lightly reject a Supreme Court interpretation of identical or substantially similar language").

Moreover, there is no other principled basis to adopt a different rule. The rule from *Halper*—which limits the application of the constitutional prohibition on double jeopardy—is neither a sharp nor a radical departure from the Supreme Court's previous decisions, nor does it represent a retrenchment on a Bill of Rights issue. *See Kahn,* 701 N.W.2d at 828. And Bergstrom has not identified any reason that a rule limiting double-jeopardy claims to actions by the sovereign would inadequately

---

**10.** In *Hanson,* we adopted the "solely deterrent/retributive" test from *Halper* to determine whether a sanction is a criminal penalty or a civil remedy in the context of a double-jeopardy challenge brought under both the United States Constitution and the Minnesota Constitution. 543 N.W.2d at 88. The Supreme Court subsequently abandoned the "solely deterrent/retributive" test in *Hudson,*

522 U.S. at 96, 118 S.Ct. 488. Because we conclude that the prohibition on double jeopardy does not apply to litigation between private parties, we express no opinion about whether we should reconsider our decision in *Hanson* in light of *Hudson* with respect to the standard that governs challenges brought under the Minnesota Constitution.

protect the basic rights and liberties of our citizens. Accordingly, we conclude that the extended OFP did not violate Bergstrom's double-jeopardy rights under the Minnesota Constitution.

## VII.

For the foregoing reasons, we affirm the decision of the court of appeals in part, reverse in part, and remand to the district court for further proceedings to determine whether the provisions in the extended OFP that prohibit Bergstrom from having contact with the minor children burden no more speech than necessary to serve a significant state interest.

Affirmed in part, reversed in part, and remanded.

LILLEHAUG, J., not having been a member of this court at the time of submission, took no part in the consideration or decision of this case.

GILDEA, Chief Justice (concurring in part, dissenting in part).

The plurality today rewrites the facts in the record in order to support its ill-considered and unnecessary remand of Bergstrom's claim with respect to his children. The plurality's analysis of this claim is not consistent with either the record or our precedent. I therefore respectfully dissent from that portion of the opinion.[1]

Bergstrom argues that the 50–year extension of the order for protection (OFP) in this case is unconstitutional both with respect to Vanessa Rew, his ex-wife, and with respect to his and Rew's minor chil-

dren. I concur with the conclusion that the statute authorizing the extension of an OFP for 50 years, Minn.Stat. § 518B.01, subd. 6a(b) (2012), is constitutional on its face and as applied with respect to Rew. With respect to the children, the court rightly concludes that the OFP does not limit Bergstrom's contact with his children for 50 years. Rather, the OFP prohibits Bergstrom from having contact with his children only until they reach 18. The plurality nevertheless holds that Bergstrom's as-applied challenge to the OFP with respect to the children must be remanded for further fact-finding by the district court. I disagree for two reasons.

First, the remand is ill-considered. Specifically, consistent with our precedent, we should not even address Bergstrom's as-applied challenge to the 50–year duration of the restrictions on his contact with the children. There is no reason to address Bergstrom's claim because the court has interpreted the extended OFP as limiting Bergstrom's contact with the children "for only a few years." Bergstrom makes no argument that a restriction on contact with his children "for only a few years" is unconstitutional, and he has not provided an adequate record for appellate review of that unasserted claim.

Second, if the court were to reach the claim that Bergstrom does not make, a remand is still not necessary. A remand is unnecessary because Bergstrom consented to the restrictions in the 2008 OFP, and the district court specifically found that the safety of Rew and the children requires the parenting-time restrictions. The plurality ignores both facts in unnec-

---

1. We are unanimous except for Bergstrom's claim involving contact with the children. I use the term "plurality" in my discussion of this claim because a majority of the court's members do not agree on the analysis supporting the remand of the claim to the district court.

essarily remanding this matter to the district court for additional findings regarding whether these restrictions on contact with the children burden no more speech than necessary to protect Rew or the children from domestic abuse.[2] The court compounds its error when it concludes that the findings the district court made are sufficient to support the constitutionality of the 50–year OFP as to Rew but that these same findings are inadequate to support the much shorter OFP as to the children.

For these reasons, I respectfully dissent from that portion of the opinion addressing the constitutionality of Minn.Stat. § 518B.01, subd. 6a(b), as applied to the restrictions on Bergstrom's contact with the children.

## I.

I turn first to a discussion of the facts in the record before us. The plurality grounds its decision to remand on its assertion that Rew's allegations of domestic abuse did not include allegations that Bergstrom abused the children. The plurality is wrong.

The record shows that Rew alleged that Bergstrom has waged an extended campaign to terrorize his children along with his ex-wife, both by violating orders for protection in the children's names and by threatening the children's safety and emotional well-being. In Rew's 2008 OFP affidavit and petition, she alleges that when she was 8 months pregnant with her first son, Bergstrom pushed her down the stairs during an argument. Minnesota law makes clear that an assault against a pregnant woman can also qualify as an assault against her unborn child. *See* Minn.Stat. §§ 609.267–.2672 (2012). In addition, Rew alleged that Bergstrom had "threatened in the past to not return the children" after visitation. Threatening to kidnap the children constitutes "domestic abuse" against the children under the Domestic Abuse Act.[3] *See* Minn.Stat. § 518B.01, subd. 2(a)(2)-(3) (2012). Rew's request for pro-

---

2. The concurrence recommends that we remand to the district court to "provide clarity to the parties" about whether an OFP was issued against Bergstrom to protect the children from domestic abuse, or whether the restrictions involving the children were only intended as a temporary parenting-time decision based on the abuse against Rew and the best interests of the children. If, as the concurrence suggests, the restrictions placed on Bergstrom's contact with the children are permissible under the First Amendment as a matter of law, no remand is necessary. No issue between the parties in this case would remain, and it is not a prudent use of judicial resources to clarify "for the benefit of the parties" when the restrictions are permissible. *See State v. Stanke*, 764 N.W.2d 824, 829 (Minn.2009) ("[T]o remand this case to the district court would not be a prudent use of the time and resources of the judicial system.").

3. The Domestic Abuse Act defines "domestic abuse" to include "the infliction of fear of

imminent physical harm, bodily injury, or assault," as well as "terroristic threats." *See* Minn.Stat. § 518B.01, subd. 2(a)(2)-(3) (2012). The definition of "terroristic threats" includes "directly or indirectly" threatening to kidnap someone with the purpose to terrorize another. *See* Minn.Stat. § 609.713, subd. 1 (2012) (defining "crime of violence" for the purposes of the terroristic-threats statute to include all "violent crime" under Minn.Stat. § 609.1095, subd. 1(d) (2012), which includes kidnapping under Minn.Stat. § 609.25 (2012)); *see also* Minn.Stat. § 609.25 (defining kidnapping to include "confin[ing] or remov[ing] from one place to another" someone under 16 "without the consent of the person's parents or other legal custodian" in order to "commit great bodily harm or to terrorize the victim or another"). It is a mistake to dismiss Bergstrom's threat not to return the children on the theory that the "threat was directed at Rew, not the children." Under Minn. Stat. § 609.713, subd. 1, "indirect[ ]" threats of violence are "terroristic threats." Accord-

tection of the children was further supported by her allegation that she was "afraid" for the safety of the children and that she "fear[ed]" for the safety of the children. According to the August 2008 report of the guardian ad litem, each child "expressed anxiety about what their Father would 'do next' if he resumed contact with them."[4] And the children's therapist believed that the older child is "very afraid of his Dad."[5] The court construes Bergstrom's implicit admission of abuse (and the resulting 2008 OFP) narrowly based on its determination that Rew's 2008 petition "does not definitively allege that Bergstrom committed domestic abuse against the two minor children." This determination, however, rests on Rew's failure to check a box on a form. Rew's petition for an OFP states:

> ingly, even if Bergstrom's threat was delivered through Rew, the threat still constitutes a "terroristic threat" against the children and therefore is an act of domestic abuse.

4. The plurality dismisses the report from the guardian because the plurality is uncertain as to whether the report is in the record. This uncertainty is unfounded. Under the Rules of Civil Appellate Procedure, "the record on appeal" includes "[t]he papers filed in the trial court." Minn. R. Civ.App. P. 110.01 ("The papers filed in the trial court, the exhibits, and the transcript of the proceedings, if any, shall constitute the record on appeal in all cases."). The 2008 guardian ad litem report was submitted to the trial court in connection with the August 20, 2008 hearing. The order appointing the guardian directed the guardian to submit a written report to the court and provide copies to the parties or their counsel, and the report itself indicates that a copy was provided to Bergstrom. We also know from the notes on the report that the district court reviewed the report, the guardian appeared at the August 2008 hearing, and the guardian spoke on the record. The reason we do not know more—what was said at the hearing—is that Bergstrom stipulated to the 2008 OFP and did not order a transcript of the hearing for purposes of this appeal.

5. The court discounts Rew's allegations that the children were afraid of Bergstrom be-

[Bergstrom] has inflicted or threatened domestic abuse ☒ upon me and/or ☐ upon the minor child(ren) named here:

*[T.C.B.] 8/29/97*

*[D.S.B.] 7/11/99.*

Even if Rew should have checked both boxes to allege abuse against the children (which is not clear from the form), her intent was clear from the fact that she listed the children and their birth dates in the spaces provided. Moreover, our precedent requires us to liberally construe pro se filings. *See State ex rel. Farrington v. Rigg*, 259 Minn. 483, 484, 107 N.W.2d 841, 841–42 (1961). Our precedent therefore does not permit the rejection of Rew's allegation of abuse against her children on a technicality.

cause "a bare allegation of fear is insufficient to demonstrate" domestic abuse. But the court relies on Rew's assertion that she was afraid of Bergstom in concluding that the record supports a 50–year extension of the OFP as to Rew. The children's fear is entitled to no less weight in my view. The court also ignores the real costs domestic abuse inflicts upon all members of a family, not just the immediate target of the abuser. There is "broad agreement that children who witness violence are gravely harmed," that "[t]he scope of the damage that is done to children who witness violence is vast," and that problems caused to children who witness domestic violence "are so serious that exposure to domestic violence has been called a severe form of child abuse." Leigh Goodmark, *From Property to Personhood: What the Legal System Should Do For Children in Family Violence Cases*, 102 W. Va. L.Rev. 237, 245–46 (1999) (citation omitted) (internal quotation marks omitted); *see also In re Heather A.*, 52 Cal.App.4th 183, 60 Cal.Rptr.2d 315, 321–23 (1996) (removing two minor children from their father's custody because of evidence they suffered "secondary abuse" in the form of exposure to violent confrontations between their parents, which endangered their physical and emotional safety).

Turning to Rew's 2010 motion to extend the OFP, Rew repeated, in the affidavit submitted in support of her motion, the allegation that Bergstrom would "physically abuse" her while she was pregnant, which included pulling her hair, punching her, and choking her. She also alleged that Bergstrom had "initiated acts of harassment and stalking" against her and the children and that the children were "scared" when they saw Bergstrom after he was released from jail. *See* Minn.Stat. § 609.02, subd. 16 (2012) (defining "qualified domestic violence-related offense" for the purpose of determining when those who violate OFPs will be subject to enhanced penalties to include violations of a domestic abuse no-contact order issued under Minn.Stat. § 629.75, subd. 1(3) (2012)). Rew also said in her 2010 motion that on August 26, 2007, Bergstrom was found "prowling the area" around her friend's house "to try to find me *and my children.*" (Emphasis added.) And Rew alleged that on July 11, 2010, Bergstrom was driving on the street in front of her parent's house "looking for me *and the kids.*" (Emphasis added.) Finally, according to Rew's affidavit, the children "are still in counseling to address the effects of their father's abusive behavior. They do not wish to have any contact with their father and continue to have safety concerns. Their counselor does not recommend any contact by the children with their father."

To summarize, the allegations Rew made in support of her petition for an OFP in 2008 and in her 2010 motion for an extension of the OFP make clear that Bergstrom's domestic abuse was targeted not only at Rew but also at the well-being of the children. The district court acknowledged these allegations when it held that the OFPs were necessary for the safety of the children. We are bound by this record and are not entitled to create our own facts.[6]

## II.

When all of Rew's allegations in the record are considered, it is clear that it is a mistake to remand Bergstrom's claim challenging a 50–year restriction on his contact with the children.

## A.

As a threshold matter, an analysis of the constitutionality of the restrictions on Bergstrom's contact with the minor children for 50 years is not necessary. The analysis is not necessary because the suspension of Bergstrom's parenting time in the extended OFP was only "temporar[y]" and the court interprets the restrictions on his contact with the children as applying— at the longest—only until each child reaches the age of 18.[7] Here, the oldest child will turn 18 in 2015, and the youngest child will turn 18 in 2017. Under well-settled

---

6. The concurrence suggests that neither Rew's 2010 affidavit nor the three OFPs issued by the district court contained any "specific allegations of domestic abuse against the children." As set forth above, the concurrence's assertion cannot be squared with the evidence in the record.

7. In her affidavit supporting her request for an extended OFP, Rew asked the district court to consider the safety of the children and to suspend Bergstrom's parenting time "until this matter can be addressed permanently in Family Court." Following a hearing, the district court "temporarily suspended" Bergstrom's parenting time. According to the terms of the extended OFP, "[t]he question of parenting time (visitation) will be decided by the Court in the divorce matter." Therefore, Bergstrom may request that the family court restore his parenting time with the children.

rules, we do not decide constitutional questions "unless it is necessary to do so in order to dispose of the case." *State v. N. Star Research & Dev. Inst.*, 294 Minn. 56, 81, 200 N.W.2d 410, 425 (1972).

In this case, Bergstrom indicates that he is challenging the "50–year OFP 'remedy' subsection" of the OFP statute, Minn.Stat. § 518B.01, subd. 6a(b), which permits a court to grant relief "for a period of up to 50 years." Bergstrom's First Amendment challenge centers on "the very long length of time of the restraining order"—the extension of the OFP for a period of 50 years. Bergstrom argues that it is unconstitutional to restrain his speech for 50 years, which "would not allow him to see his children, ever again." In a memorandum to the district court, Bergstrom acknowledged that "[a]n OFP extended for 1–2 years is hugely different from one extended for 50 years." Therefore, the conclusion that the extended OFP restricts Bergstrom's contact with the children "for only a few years" renders unnecessary the consideration of Bergstrom's challenge to "a 50–year prior restraint on speech." *See State v. One Oldsmobile Two–Door Sedan*, 227 Minn. 280, 288, 35 N.W.2d 525, 530 (1948) (adopting alternative ground of decision rather than deciding constitutionality of statute).

Even if the constitutionality of the restrictions on Bergstrom's contact with the minor children were properly before us, we should not reach the First Amendment issue because Bergstrom has not provided an adequate record for appellate review. *See Truesdale v. Friedman*, 267 Minn. 402, 404, 127 N.W.2d 277, 279 (1964) (explaining that the party seeking review must provide a record that is sufficient to show "all matters necessary for consideration of the questions presented"). Bergstrom argues

that the restrictions on his contact with the children violate the First Amendment because there is no finding that he ever abused the children, notwithstanding his consent to the 2008 OFP with the "understand[ing] that the order will be enforced as if there was an admission or finding of domestic abuse." The plurality evaluates Bergstrom's as-applied challenge "in the context of the specific circumstances presented by this case," including "the facts underlying the issuance of the 2008 OFP." This analysis focuses on the "adequacy of the record" and the absence of any evidence that Bergstrom abused the children, and determines that the record is "insufficient" to conclude that the extended OFP satisfies the First Amendment with respect to the children. The plurality and concurrence can reach this conclusion, however, only by ignoring all of Rew's allegations detailed above.

Moreover, even if the record could be viewed as insufficient, which in my view it cannot, such deficiency exists because Bergstrom consented to the 2008 OFP without findings, and he has not provided a copy of the transcript from the hearing at which the parties' agreement was stated on the record. Accordingly, Bergstrom has not met his burden of providing an adequate record for review. *See Kendaco, Inc. v. Rickard–Borske Co.*, 290 Minn. 346, 350–51, 187 N.W.2d 697, 700 (1971) (affirming the district court where the record presented to support the appellants' claim was incomplete and ambiguous).

B.

In any event, the plurality misconstrues the record that is available in concluding that a remand is required because there are "no findings from the district court that Bergstrom has ever abused the minor

children or that the restrictions on Bergstrom's contact with the children are necessary to protect Rew or the minor children from domestic abuse." The factual allegations detailed above make clear that the court is simply wrong in asserting that Rew never alleged that Bergstrom committed domestic abuse against the children. In addition, the plurality and concurrence turn our standard of review on its head by reviewing the record in the light least favorable to the district court's finding that the restrictions on Bergstrom's contact with the children are necessary for their safety. *See In re Custody of N.A.K.,* 649 N.W.2d 166, 174 (Minn.2002) (stating that "an appellate court views the record in the light most favorable to the trial court's findings").

When the record as a whole is considered, it is clear that there was no need for the district court to make further findings of abuse in the 2008 OFP. The district court did not need to make further findings because, just as he did for Rew, Bergstrom did not object to the restrictions on his contact with the children and he conceded that he understood that the OFP would be enforced as if there was a finding of domestic abuse. In reaching the conclusion that the district court needed to make more findings, the plurality adds words to the OFP by interpreting the order as limited to a finding of domestic abuse against only Rew. The OFP, however, was explicitly issued on behalf of the children and grants protection to the children.

Moreover, although the plurality "remand[s] to the district court for further findings as to whether the provisions burdening Bergstrom's speech to the children are necessary" to protect Rew or the children from domestic abuse, the district court already found that "[t]he safety of [Rew] and the children requires that parenting time (visitation) be limited." It is not clear what further findings are needed.

Indeed, the court concludes that the district court's findings with respect to Rew meet the constitutional standard even for a 50-year restriction. In reaching this conclusion, the court specifically states that "[t]he record, considered as a whole, establishes that Bergstrom has abused Rew and repeatedly disregarded prior no-contact orders, satisfying the requirements for an extended OFP under subdivision 6a(b)." The facts the court relies on to support this holding are:

(1) "In the 2008 OFP petition, Rew stated that she was 'afraid for [her] safety' and feare[ed] [imminent] harm" because, among other things, Bergstrom pushed her down a set of stairs when she was 8 months pregnant with their oldest child.

(2) Bergstrom consented to the 2008 OFP with the understanding that it would be enforced "as if there was an admission or finding of domestic abuse." The district court did not make any specific factual findings apart from accepting Bergstrom's admission.

(3) When the district court extended the OFP in 2010, the court did not receive testimony, relying instead on the fact that it had issued two prior OFPs against Bergstrom at Rew's request, that Bergstrom had recently been released from incarceration, and that Bergstrom had been convicted of violation of an OFP on at least three prior occasions.

These same three facts are true for the children; the court cannot contend otherwise unless it is going to ignore the evi-

dence set forth above. Yet, the plurality and concurrence still assert that the record is insufficient to support the much shorter OFP to protect the children.

What the plurality and concurrence are really doing is applying different standards in examining the constitutionality of the restrictions placed on Bergstrom's contact with the children and the restrictions placed on contact with Rew.[8] The analysis does not explain why different standards apply. Rather, the plurality simply suggests that even though "the restrictions in the extended OFP that relate to the minor children are much shorter in duration than those that relate to Rew," the district court should have made specific findings that Bergstrom abused the children and that "the restrictions on Bergstrom's contact with the minor children burden no more speech than necessary" to protect the children from domestic abuse. But the court did not require these specific findings in upholding the 50–year prohibition on Bergstrom's contact with Rew. Rather, it simply determined that the district court "carefully crafted the specific terms and conditions of the extended OFP." ·

We cannot have it both ways. If, as the court concludes, the district court made sufficient findings for the OFP extension to be constitutional as applied to Rew, then surely those same findings must be suffi-cient to sustain the much more limited order with respect to the children. This is so because the OFP to protect the children, which extends for only a few years, is much more narrowly tailored than the OFP to protect Rew, which extends for 50 years.[9] *See Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 765, 114 S.Ct. 2516, 129 L.Ed.2d 593 (1994) (stating that a content-neutral injunction must "burden no more speech than necessary to serve a significant government interest"). Not only is the OFP with respect to the children in effect for only a few years, but the OFP provides a process by which Bergstrom can have contact with his children even earlier: He can apply to the court for a restoration of his parenting time if he completes at least 3 months of therapy and the children complete at least 6 months of therapy. No similar process exists for Rew; yet, the court concludes that the 50–year OFP for Rew is constitutional. Under the court's own analysis, just as the OFP for Rew is constitutional, so must the OFP for the children be constitutional.

In conclusion, the court errs by addressing Bergstrom's First Amendment challenge to the 50–year restriction on his contact with the children and remanding to the district court. I would resolve the appeal without addressing the as-applied challenge with respect to the children, and affirm.

---

**8.** The concurrence similarly suggests that "if the safety of the children, including protecting them from domestic abuse by Bergstrom, is to be the state interest that justifies restricting Bergstrom's speech, further findings of fact would be required." But the concurrence does not require any such "findings of fact" with regards to Rew. If allegations of abuse— in the absence of any findings of abuse—are sufficient to uphold the constitutionality of a 50–year OFP on Rew's behalf, allegations of abuse should similarly be sufficient to support the much shorter OFP on behalf of the minor children.

**9.** The concurrence asks whether I would believe a 50–year restraining order, without district court findings of abuse of the children, would be enforceable if the references to the "minor" children did not appear. That question is not before us. If it were, as the court does here, I would consider whether the restrictions were sufficiently narrowly tailored to not burden any more speech than necessary to protect the interests at stake.

DIETZEN, J. (concurring in part, dissenting in part).

I join in the concurrence and dissent of Chief Justice Gildea.

ANDERSON, Justice (concurring).

I join the majority opinion, except with respect to certain factual issues pertaining to Rew's safety and the best interests of her children justifying the restrictions on Bergstrom's parenting time. I agree with the majority that a remand is required, but I would conclude that the remand is only necessary to clarify for the benefit of the parties whether an order for protection (OFP) was issued against Bergstrom protecting the children based on past domestic abuse or a threat to the safety of the children, or whether the restrictions involving the children were only intended as a temporary parenting-time decision based on the abuse against Rew and the best interests of the children. Because the current restrictions placed on Bergstrom's contact with the children are no more burdensome than necessary to protect the State's interest in Rew's safety and the emotional well-being and mental health of the children, I would conclude that the restrictions are not unconstitutional and that further fact-finding is not required on this issue.

The majority properly outlines that restraints on speech must be balanced against a significant state interest and analyzed with an eye towards restricting as little speech as possible while still protecting that state interest. As the majority discusses, protecting the children from domestic abuse is clearly a significant state interest. A valid OFP issued on behalf of the minor children requires either that domestic abuse was committed directly against the children, Minn.Stat. § 518B.01, subd. 4 (2012), or that the district court found that the order was necessary to protect the children as Rew's family or household members, *see* Minn.Stat. § 518B.01, subd. 6(a)(13) (2012); *Schmidt ex rel. P.M.S. v. Coons*, 818 N.W.2d 523, 529 n. 6 (Minn.2012). There is no dispute here that an OFP was issued involving the children, but neither the detailed July 30, 2010, affidavit submitted by Rew outlining the criminal, abusive, and stalking behavior of Bergstrom, nor any of the three orders issued by the district court imposing or continuing the OFP contain any specific allegations of domestic abuse against the children or explain why the OFP is necessary for the children's protection. Thus, I agree with the majority that if the safety of the children, including protecting them from domestic abuse by Bergstrom, is to be the state interest that justifies restricting Bergstrom's speech, further findings of fact would be required.

I begin with the observation, not clearly laid out in either the majority opinion or by the Chief Justice in her concurrence and dissent, that the consequences of an extended OFP are of different orders of magnitude as between Bergstrom's former spouse and his children. As a consequence of the dissolution of a marriage, even under less threatening circumstances than we have here, there is only a limited legal (or practical) relationship between the former spouses, usually centered on raising children, and even that relationship likely fades away with time. It is a different, and much more complicated, story when dealing with parent-child relationships, usually life-long in character.

And while I agree with the majority that the reference to "minor children" is sufficient to confine the OFP in this case to the

period of time the children are under the age of 18, that is not what appellant believes is at issue.[1] Respondent agrees—the opening sentence to the Respondent's statement of the case tells us "Respondent filed a motion to extend an OFP ... on behalf of herself and her minor children," and she was seeking "a 50–year extension."

And if that is what the parties sought and resisted here, and what the district court ordered, the Chief Justice's argument that an OFP was issued protecting not only Rew but also the children would be very problematic. Would a 50–year restraining order, without district court findings of abuse of the children, be enforceable if the references to "minor" children did not appear?

Fortunately, in the end, although not free from doubt, I think there is an alternative explanation for what the district court was attempting to accomplish when faced with these difficult circumstances. That explanation is that the orders restricting Bergstrom's contact with his children were instead intended as a temporary decision on parenting time. Parenting-time decisions are made based on different considerations than the issuance of an OFP, but these considerations can also represent significant state interests that may justify a burden on speech. The OFP statute specifically permits the district court to temporarily limit *or deny* parenting time based on the safety of the victim (here, Rew), the safety of the children, and the best interests of the children. Minn. Stat. § 518B.01, subd. 6(a)(4). Thus, Bergstrom's parenting time can be temporarily denied, which in effect means no contact with his children, if this restriction was necessary to protect the State's interests in Rew's safety and the safety and best interests of the children.

There is significant evidence supporting the theory that the OFP incorrectly listed the children as direct petitioners and instead meant to include them only as to a temporary denial of parenting time. In Rew's 2008 application for an OFP, she requested relief including "[N]o parenting time (visitation)." In the guardian ad litem report, Rew's request on behalf of the children is characterized as a parenting-time decision, stating "[Rew's] current request for protection seeks review of [Bergstrom's] parenting time award under the Judgment and Decree based upon the most recent OFP violation and related allegations of conduct that, if proven, may be contrary to the welfare and best interests of the children."[2] The report then

---

1. Because the interpretation adopted by the majority, and concurred in by the Chief Justice, makes the 50–year OFP irrelevant in this case, it is not necessary to reach the issues of what standard should be applied or what hearing rights a restrained party is entitled to if an extended-length OFP is sought restraining a parent from contact with a child. Here I note only that the interest of parents in the care and custody of their children "is perhaps the oldest of the fundamental liberty interests recognized by this Court." *Troxel v. Granville*, 530 U.S. 57, 65, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000).

2. The majority and the Chief Justice disagree about the status of the guardian ad litem report. The majority suggests it was never admitted into evidence, while the Chief Justice notes that under Minn. R. Civ.App. P. 110.01, the record on appeal consists not only of documents formally submitted as exhibits during a hearing, but also all "papers filed in the trial court." But even if the guardian ad litem report was not properly "filed" within the meaning of the rule and is thus not viewed as part of the record, the absence of this report from the record was a technical error or omission and should be corrected by our court pursuant to Minn. R. Civ.App. P.

recommends that "[Bergstrom's] parenting time with the children should be temporarily suspended" until Bergstrom completed his probation and he and the children both completed 6 months of therapy. The 2008 OFP restrictions against contact with the children are detailed in the parenting-time section of the OFP, stating that "[p]arenting time (visitation) by [Bergstrom] is temporarily suspended" until certain conditions, which largely follow the recommendations in the guardian ad litem report, are met. The 2009 and 2010 OFPs likewise detail sensible restrictions on contact with the children in the parenting-time section, following the same format as the 2008 OFP. This supports the theory that the district court's decision to restrict contact with the children was made as a temporary denial of parenting time based on Bergstrom's abuse of Rew, not as a grant of an OFP to the children based on past abuse or a threat to their safety. The language in all of the OFPs that the restrictions only apply to *minor* children also supports this reading, as parenting time is only relevant when the children are minors.

If the restrictions in the OFPs regarding the children were intended as temporary restrictions on parenting time, Minn. Stat. § 518B.01, subd. 6(a)(4), introduces two additional state interests beyond the safety of the children that potentially form a basis for restricting Bergstrom's speech—Rew's safety and the best interests of the children. There is significant evidence in the record that Bergstrom's contact with the children endangers Rew and is not in the best interests of the children. In Rew's affidavit, she describes numerous acts of domestic abuse that Bergstrom has committed against her, including pushing her down the stairs, punching her, choking her, causing her to black out by hitting her head against a faucet, and threatening to kill her. Some of these actions led to the arrest and conviction of Bergstrom for fifth-degree domestic assault. Bergstrom has also repeatedly stalked Rew and violated the OFPs issued to protect her from him. A psychological evaluation of Bergstrom reported that it was conceivable that Bergstrom would involve the children in the "determined, even obsessive" way in which he stalked Rew. The conclusion that Bergstrom may use the children to reach Rew is also supported by a claim by one of the children, reported to a therapist, that Bergstrom had hidden cellphones in various locations and pressured the child to use these phones to secretly call him. Thus, there is ample support in the record to conclude that allowing Bergstrom to contact the children would create a safety risk for Rew.

In addition to the potential threat to Rew's safety, Bergstrom's contact with the

110.05. The guardian ad litem was specifically ordered by the district court to prepare the report, it was submitted to the court, and both parties were copied on the transmittal letter. The fact that the restrictions involving the children set out in the OFP closely mirror the recommendations made in the guardian ad litem report suggests that the district court relied heavily on the information contained in the guardian ad litem report, and therefore, it should have been part of the record. Additionally, neither party has objected to the inclusion of this report as part of the record.

For these reasons, I would conclude that the guardian ad litem report qualifies under Minn. R. Civ.App. P. 110.05 as "anything material to either party [that was] omitted from the record by error or accident," and so this court, "on its own initiative, may direct that the omission ... be corrected." In addition, even if the guardian ad litem report is discounted, there is otherwise sufficient evidence given the prior OFPs to support the parenting-time determination reached by the district court.

children also threatens another significant state interest—namely the emotional well-being and mental health of the children, often referred to as "the best interests" of the children. The United States Supreme Court has previously stated that the State "has a duty of the highest order to protect the interests of minor children." *Palmore v. Sidoti*, 466 U.S. 429, 433, 104 S.Ct. 1879, 80 L.Ed.2d 421 (1984); *see also Morey v. Peppin*, 375 N.W.2d 19, 25 (Minn.1985) (noting that the rights of a parent must be balanced against the rights of the child). Bergstrom's history with Rew has understandably strained the children's relationship with Bergstrom, and the guardian ad litem report notes that at least one child worries that Bergstrom will find the family and seeks to protect the family against Bergstrom by frequently checking to see that the doors and windows at home are locked.[3] The child also explained that Bergstrom has previously sought contact through inappropriate methods, such as by hiding in the bushes during a backyard sleepover. The child's therapist reports that, in her view, the child is "very afraid of his Dad," and she notes that the child would like to see his father "at some point, but not right now." The guardian ad litem report concludes that the children need "sufficient time to heal emotionally through their own therapeutic process," and so contact with Bergstrom would not be in their best interests at this time. Thus, the record supports that Rew's safety and the children's best interests require that parenting time be denied until Bergstrom can show, through therapy or other changed circumstances, that his contact with the children no longer endangers the State's significant interests in Rew's safety and the children's best interests.

The restrictions imposed on Bergstrom's speech as related to the children are narrowly tailored so as to not burden any more speech than necessary to protect these interests. A parenting-time decision authorized by the OFP statute based on the best interests of the child and the safety of the non-abusive parent can only create restrictions that last until the child is no longer a minor. Here, the district court only imposed restrictions on Bergstrom's access to his children that would last a few years, and the restrictions can be removed by meeting conditions directly tailored to protect the children's best interests. Specifically, the conditions involving therapy and input from the therapists about reunification are designed to allow Bergstrom to reunite with his children as soon as it can be shown that both the children and Bergstrom are equipped with the tools necessary to prevent the interaction from being harmful to the children. Accordingly, the restrictions are constitutional, as they burden no more speech than necessary to protect the State's interest in Rew's safety and the children's best interests, and additional fact-finding by the district court is not necessary regarding the parenting-time restriction. This analysis has the additional benefit of avoiding the more difficult questions otherwise presented about enforcing an OFP on behalf of children where none of the orders issued by the district court specifically finds abuse of the children by the restrained party.[4]

Because I conclude that the parenting-time approach set forth above is the most

---

**3.** The guardian ad litem report indicates that both children expressed anxiety about Bergstrom and what he might do if contact was resumed with the family.

**4.** As noted earlier, an OFP cannot be granted to a non-victim, *Schmidt*, 818 N.W.2d at 529, unless it is issued under Minn.Stat. § 518B.01, subd. 6(a)(13), which provides for

likely, but not certain, explanation that reconciles the various district court orders issued here, I agree that remand is required, albeit on different grounds than suggested by the majority, to permit the district court to explain its analysis and provide clarity to the parties about whether the inclusion of the children on the OFP was an implicit finding that Bergstrom had committed domestic abuse against the children or was a threat to their safety. The record sufficiently supports the current restrictions placed on Bergstrom's contact with the children as no more burdensome than necessary to protect the State's interest in the best interests of the children and Rew's safety and, therefore, I would conclude that the restrictions are constitutional under our First Amendment analysis.

orders that are "necessary for the protection of a family or household member" of someone who has received an OFP. If the district court holds that the OFP was intended to forbid, and did forbid, contact by Bergstrom with his children based on abuse or a threat to their safety, in that event, the district court must consider whether an additional hearing and the opportunity for Bergstrom to present evidence on this issue must be afforded.